## KENNEDY ET AL. v. SILAS MASON CO.

No. 590. Argued April 20, 1948.—Decided May 17, 1948.

*Leonard Lloyd Lockard* argued the cause and filed a brief for petitioners.

*William L. Marbury* and *Charles D. Egan* argued the cause and filed a brief for respondent.

Briefs of *amici curiae* in support of petitioners were filed by *Solicitor General Perlman* and *Robert L. Stern* for the United States; and *June P. Wooten.*

Briefs of *amici curiae* urging affirmance were filed by *J. R. L. Johnson, Jr.* and *Robert A. Fulwiler, Jr.* for the Hercules Powder Co.; *Ernest S. Ballard, Frank F. Fowle, Jr.* and *Charles R. Kaufman* for E. I. du Pont de Nemours & Co.; and *Grover T. Owens* and *E. L. McHaney, Jr.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

This case involves questions as to the application of the overtime provisions of the Fair Labor Standards Act [1] to certain persons who worked in a government-owned plant in which respondent produced munitions under a cost-plus-fixed-fee contract with the War Department. It involves such subsidiary issues as whether the plaintiffs were employees of the Government or of the private contractor, whether munitions produced for shipment across state lines in war use are produced for "commerce" [2] and whether they are "goods" [3] within the meaning of the Act. Substantial claims of petitioners may be denied or large

---

[1] Act of June 25, 1938, c. 676, 52 Stat. 1060, 29 U. S. C. § 201.

[2] The Act defines commerce as follows: " 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

[3] The Act defines goods as follows: " 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

sums added to the cost of the war by the answers to these questions, and many cases other than this will be controlled by its decision.

The manner in which the case has thus far developed raises the question whether as a matter of good judicial administration this Court should attempt to decide these far-reaching issues on this record.

No one questions that, taking its allegations at their face value, the complaint in this case states a cause of action under the Fair Labor Standards Act. Summary judgment has gone against the plaintiffs because, by affidavit and exhibits, the allegations have been found unsustainable. The defendant filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure [4] "on the ground that defendant is entitled to a judgment as a matter of law." The motion, so far as the Fair Labor Standards Act was concerned, was based on an affidavit "which states facts showing that as a matter of law neither complainants nor defendant were covered" by the Act in that neither "were engaged in commerce, or in the production of goods for commerce." Made part of the affidavit by reference were defendant's construction and operation contract with the Government and some 22 supplements or change orders covering nearly 200 pages of the record. The complainants then filed a supplemental complaint which added by reference all regulations and interpretative bulletins of the Department of Labor and Administrator of the Fair Labor Standards Act clarifying and explaining it. And, as against defendant's affidavit and exhibits, the plaintiffs,

---

[4] Rule 56 provides that the trial court may award summary judgment after motion, notice and hearing, provided the pleadings, depositions, admissions and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

as recited in the District Court's opinion, offered by reference affidavits of three former employees of the contractor showing the customs of payment and operation as bearing on the issue of whether they were government employees or those of the private contractor. The affidavits do not appear in the record, but parts deemed relevant are set out in the court's opinion.

On this basis the District Court first denied summary judgment. 68 F. Supp. 576. It was of the view that the plaintiffs, whatever the forms of the transaction, were in reality employed by the Government and, hence, the Fair Labor Standards Act by its own terms did not cover them. But it held that they were covered by § 4 (b) of the Act of July 2, 1940,[5] and were entitled to recover overtime under it.

On rehearing, the court concluded, however, that no remedy under this latter Act was available to them in this action as it was not pleaded. Accordingly, it granted summary judgment against them. 70 F. Supp. 929. The Circuit Court of Appeals, Fifth Circuit, sitting *en banc* affirmed. 164 F. 2d 1016. It held that the plaintiffs were in substance employees of the United States, that munitions were not a part of commerce within the meaning of the Act, and that in any event munitions were not "goods" within the meaning of the Act. One judge, concurring, did not pass on the question whether petitioners were employees of the Government but held only that munitions were produced for war, not for commerce. One judge dissented on the ground that the whole system "was designed and operated so that the United States should not be the employer" and considered that munitions produced for transportation to a place outside of the State were produced for commerce and those engaged therein

---

[5] Act of July 2, 1940, c. 508, 54 Stat. 712.

were subject to the Act. The case is here on certiorari, 333 U. S. 841.

The Silas Mason Company, in a sense, is no more than a nominal defendant, for it is entitled to reimbursement from the Government. The Government, the ultimate party in interest, appears through the Department of Justice in support of the statutory basis for the claims against itself. But it advises us that "The Department of the Army is of the view that respondent's position has merit for the reasons set forth in the brief filed by respondent. The Army is concerned with the great cost to which the Government will be subjected if the numerous suits akin to this are lost, or even if it must bear the cost of defending them. Furthermore, the Army believes that the classes of employees involved in these cases were well paid, that they accepted their compensation without complaint or expectation of receiving more until this litigation was commenced sometime after the termination of their employment, and that accordingly there is little equity in the employees' present position."

Three Acts of Congress require consideration. The plaintiffs and the Government say the Fair Labor Standards Act is controlling. The defendant, the Department of the Army, which handled the transaction, and the District Court consider that the Act of July 2, 1940, controls the liability. But the trial court held it cannot be the basis of adjudication of plaintiffs' claims because no such issue was pleaded and that holding has become the law of the case since there has been no appeal. The plaintiffs pleaded their cause of action also under the Walsh-Healey Public Contracts Act,[6] but it was held unavailable to them below and their petition for certiorari

---

[6] Act of June 30, 1936, c. 881, 49 Stat. 2036, 41 U. S. C. § 35.

to this Court raises no question as to that Act and acquiesces in dropping it from our consideration.

On the question as to who was the employer, on which this case was decided below, the complaint makes a clear, factual and simple allegation. It says that these plaintiffs were employed by the corporate defendant itself. This allegation has been overborne by interpreting the terms of the contracts between that alleged employer and a third party, that is, the Government, which terms may or may not have been known to the employees. There is substantial controversy as to the way those two parties, the Government and defendant in actual practice, construed their contracts, both sides of the controversy being based on events of which we are asked to take judicial notice or to spell out from contracts without the tests which trial affords. The plaintiffs in turn seek to counteract whatever inferences may be drawn from the defendant's version of dealings between defendant and the Government by contrary inferences from dealings between employees and the defendant. But they do not prove plaintiffs' own dealings, which are not in the record, but offer affidavits which relate specifically to "laborers and mechanics" while plaintiffs were inspectors and foremen, a difference that may be material. Insofar as the allegations of the complaint are impeached by the course of dealing between defendant and the Government, they are not supported by any course of dealing to which these plaintiffs were parties. What they were paid and on what basis, whether they have already been paid for overtime on the theory that one of the other Acts applies, we do not know.

Defendant's present position, which, for all we know, may or may not be shared by the Department of the Army, is that we do not need to settle the question as to whether defendant or the Government was the actual

employer, that the effect of the war-time legislation was to set up a wholly new system of war production, which was neither private enterprise nor government operation, but an amalgamation of the two, which also prescribed a complete system of labor relation by statute which supersedes and precludes operation of the Fair Labor Standards Act. But this broad contention seems not to have been submitted to either court below, is not consistent with the theoretical basis of their decisions and appears fully presented for the first time in the reply brief in this Court.

The short of the matter is that we have an extremely important question, probably affecting all cost-plus-fixed-fee war contractors and many of their employees immediately, and ultimately affecting by a vast sum the cost of fighting the war. No conclusion in such a case should prudently be rested on an indefinite factual foundation. The case, which counsel have described as a constantly expanding one, comes to us almost in the status in which it should come to a trial court. In addition to the welter of new contentions and statutory provisions we must pick our way among over a score of technical contracts, each amending some earlier one, without full background knowledge of the dealings of the parties. The hearing of contentions as to disputed facts, the sorting of documents to select relevant provisions, ascertain their ultimate form and meaning in the case, the practical construction put on them by the parties and reduction of the mass of conflicting contentions as to fact and inference from facts, is a task primarily for a court of one judge, not for a court of nine.

We do not hold that in the form the controversy took in the District Court that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues

are clear-cut and simple,[7] present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice.

We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide.

Without intimating any conclusion on the merits, we vacate the judgments below and remand the case to the District Court for reconsideration and amplification of the record in the light of this opinion and of present contentions.

*Judgments vacated.*

MR. JUSTICE BLACK thinks the judgment should be reversed.

MR. JUSTICE DOUGLAS concurs in the result.

---

[7] Rule 56 requires that summary judgment shall be rendered if "there is no genuine issue as to any material fact . . . ." See note 4.