Margaret Catherine CHAPMAN, Appellant,

v.

HAWTHORNE FLYING SERVICE, Appellee.

No. 18516.

United States Court of Appeals Fifth Circuit.

March 17, 1961.

---

Lloyd C. Leemis, Hamilton & Bowden, Jacksonville, Fla., for appellant.

Harry T. Gray, Francis P. Conroy, Jacksonville, Fla., for appellee. Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., of counsel.

Before TUTTLE, Chief Judge, and JONES and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal from the grant of a motion for summary judgment. The suit was for damages for the death of appellant's husband, which occurred as a result of a plane crash in an airplane owned by Chapman, in which the appellant claims her husband was receiving flying instructions from a representative of the appellee flying service.

Testimony on the trial of the case directed towards establishing a relationship of master and servant between Hawthorne Flying Service and Olin Daggenhart, the pilot on the ill-fated flight, was extremely tenuous. The appellee contends, and the trial court held, that it was indeed too tenuous to warrant submission to a jury or to warrant the conduct of a full trial.

Without attempting, on the basis of the depositions submitted in support of and in opposition to the motion for summary judgment, to decide that if the appellant proves all of the facts in her favor, which are shown in the depositions that this would make out a prima facie case calling for the application of the doctrine respondeat superior, we nevertheless conclude that the evidence was sufficient to demonstrate that the case was not one that should have been terminated by summary judgment.

Deposition testimony on behalf of the plaintiff showed that one Lindemann was a regularly employed sales representative of the defendant in Jacksonville, Florida, the defendant's home office being in Charleston, South Carolina; that Lindemann had a small office at the airport; that Daggenhart was a friend and associate and did on occasions perform services benefiting Lindemann and Hawthorne Flying Service; there is no evidence that either Hawthorne or Lindemann compensated Daggenhart in money for such services, but Lindemann did furnish Daggenhart a place to stay at his home and at his office; it was shown that the decedent, Chapman, had several conversations relating to the purchase of the ill-fated plane with Lindemann; that when Chapman took title to the plane in South Carolina he turned over his trade-in single motored plane in the trade, and at Lindemann's request this plane was flown back to Jacksonville, with Chapman's knowledge, by Daggenhart. It is undisputed that at the session immediately following the transfer of title to the new plane from Hawthorne to Chapman the latter stated that he would need twenty-five hours of instruction in a dual motor plane before he could fly it by himself; that thereupon one Strickland, a fully authorized representative of Hawthorne, said, "Well, we will work that out for you," and then Lindemann, in the presence of Strickland, said to Chapman, "George, I will be most happy to give you five hours instruction free and give John [George's brother] five hours instruction free." Thereafter, Daggenhart gave Chapman four hours of instruction, according to the log of the airplane, which instruction might be found to have been

in satisfaction of Lindemann's obligation; on the day of the crash Chapman was expecting Lindemann to give him some additional instruction. However, Lindemann informed Chapman that he would be unable to fly with him on that day, but then said, "Olin here is free and it is possible that he can ride with you"; whereupon Chapman arranged with Daggenhart to fly with him on the ill-fated trip.

In view of the lack of any evidence by affidavit or deposition to the effect that Lindemann had actual authority to engage Daggenhart to furnish instructions to Chapman the plaintiff's case, if it is to be made out at all, must rest upon the theory of ostensible authority. It was the defendant's contention that whatever arrangement was made between Chapman and Daggenhart was the result of personal negotiations between them and not in satisfaction by Daggenhart of any obligation undertaken by Hawthorne. However, in view of Hawthorne's statement that "we will work that out for you," and Lindemann's promise in the same conversation that he would provide five hours of instruction free, we conclude that the case should be more fully developed by the introduction of evidence under the ordinary rules of evidence in open court before either the trial court or we should conclude that the evidence viewed most strongly in favor of the plaintiff would not warrant a finding of ostensible agency in Lindemann to furnish Daggenhart as an instructor pilot, followed by Chapman's reliance on such holding out of authority.

In a case, which to be sure involved a matter of great public policy, the Supreme Court, in Kennedy v. Silas Mason Co., 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347, pointed up the danger in a court attempting to grant a summary judgment where the pretrial facts presented by affidavit or deposition are close and are susceptible of varying inferences when it said:

"We do not hold that in the form the controversy took in the District Court [70 F.Supp. 929] that tribunal lacked power or justification for applying the summary judgment procedure. But summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated courses of legislation, contracting and practice." At page 257, 68 S. Ct. at page 1034.

We feel that we should say, as did the Supreme Court in that case:

"We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. While we might be able, on the present record, to reach a conclusion that would decide the case, it might well be found later to be lacking in the thoroughness that should precede judgment of this importance and which it is the purpose of the judicial process to provide." At page 257, 68 S.Ct. at page 1034.

Without intimating any conclusions on the merits, and, as stated previously, without implying that the plaintiff's proof as it now stands would warrant submission to a jury, we nevertheless conclude that it is the part of good judicial administration for the facts in this case to be more fully developed before the trial court determines that there is truly no genuine issue as to any material fact. Rule 56, Federal Rules Civil Procedure, 28 U.S.C.A.

The judgment is reversed for further proceedings not inconsistent with this opinion.