Eddie STANLEY, Appellant,

v.

GUY SCROGGINS CONSTRUCTION COMPANY, Appellee.

No. 18463.

United States Court of Appeals Fifth Circuit.

Dec. 13, 1961.

James A. Smith, Lake Charles, La., for appellant.

A. L. Plauche, Plauche & Plauche, Lake Charles, La., for Guy Scroggins General Oil Field Contracting, Inc.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

We plunge again into muddy waters: the legal complexities raised when a construction worker injured in offshore operations seeks recovery under the Jones Act, 46 U.S.C.A. § 688, as a "seaman".[1]

Eddie Stanley sued his employer, the Guy Scroggins Construction Company, under the Jones Act for injuries suffered when a large wave threw him against an offshore oil drilling platform while he was preparing to pour cement in the pilings under the platform. The district court granted summary judgment for the defendant on the ground that Stanley was not a seaman within the meaning of the statute. We hold that the case must go to trial.

Scroggins does general construction work for a number of companies engaged in oil drilling operations. For several years it has had a contract with Magnolia Petroleum Company to provide labor for various construction jobs. The customary practice is for Magnolia to call Scroggins when it has work to be done, and for Scroggins to send a crew of men headed by a "pusher" (foreman) to the job. Time-sheets are kept while the men are working, and at two-week intervals

---

1. 46 U.S.C.A. § 688 provides, "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

Scroggins sends a bill to the oil company for the work done during the period. Most of the work is on land, but Scroggins also works on offshore locations. On these jobs the oil company provides transportation for the workers, since Scroggins has no boats used for that purpose.

Stanley worked for Scroggins for about ten years before his accident in 1958. For the first eight years he was a truck driver. Then he became a "pusher". In an affidavit, the office manager states: "While Stanley was a pusher, he and his crew worked all over Southwest Louisiana. The great majority of his work was done on land locations but on a number of occasions he worked for short periods offshore, ranging from a day to as much as a week." He stated that the company timesheets showed that the only occasion when Stanley worked on an offshore job during 1958 was the one when the accident occurred. During much of that year, however, Stanley was not employed by the Company.

June 2, 1958, Stanley and four workmen under his supervision left Cameron, Louisiana, to work on platforms of Magnolia Petroleum Company about forty miles offshore in the Gulf of Mexico. These are stationary platforms supported by steel and concrete pilings driven into the floor of the Gulf. A Magnolia crewboat picked the men up and took them out to the platform where they transferred to a tug operated by Halliburton, an independent party under contract with Magnolia. The Scroggins workers took extra clothes with them since they did not know how long the work would require them to stay offshore. While on the job they slept, ate, and bathed on the Halliburton boat. In his deposition Stanley said that the Scroggins workers had no functions to perform relating to the navigation or movement of the crewboat, which was operated by a separate crew. Their job was to pour cement into the pilings under several different platforms. The crewboat went from one platform to another, checking back to refill any piling that showed a leak. The Halliburton boat held the cement and large pumps which pumped the cement to the platform through a rubber hose. The crew on the boat operated the pumps. The Scroggins workers were transferred from the boat to the platform where they performed their work of pouring the cement into the pilings. Stanley generally worked on the platform, although it was not necessary for him to do so, and when they worked at night he stayed on the boat so that the pump operator could see him give the signal when a pile was filled. In getting from the boat to the platform the men used a rope swing. This was the source of Stanley's accident.

Wednesday, June 4, the boat approached one of the platforms shortly before midnight and secured lines to it. The four workers swung to the platform. Just as Stanley was about to swing, a large wave lifted the boat up. Stanley was thrown off balance. He swung out, clutching the rope, and banged into a steel ladder on the platform. He injured his left side and shoulder, but continued work until the job was finished the following day and also worked on his return to shore. By Sunday his shoulder had become painful; he went to a doctor.

■■ The trial judge granted summary judgment for the defendant on the ground that Stanley was not assigned to any particular vessel and therefore was not a seaman. It is agreed that the basic facts in this case are not in dispute. When conflicting inferences may be drawn from undisputed underlying facts, however, the determination of whether an individual is a seaman must be made by the fact finder. Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769, 780, 75 A.L.R.2d 1296. The decision of this question by the court as a matter of law can be sustained only if there is no evidentiary basis to support a jury finding that Stanley was a seaman when he suffered his injury. Since this case was determined by summary judgment, the standard of review is a bit stricter: the record must negate the probability that evidence calling for a contrary result might be developed at the trial. If the pleadings, affidavits, and depositions,

available when the motion for summary judgment must be ruled on, fail to resolve any crucial question, summary judgment is premature, and the case must go to trial on the points left in uncertainty. Kennedy v. Silas Mason Co., 1948, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347; Braniff v. Jackson Ave.—Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, rehearing denied 289 F.2d 939; Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492; Whitaker v. Coleman, 5 Cir., 1940, 115 F.2d 305.

■ Two cases recently decided by this Court set the frame of reference for this case: Offshore Company v. Robison, 5 Cir., 1959, 266 F.2d 769, 75 A.L.R.2d 1296 and Texas Company v. Savoie, 5 Cir., 1957, 240 F.2d 674, cert. denied 355 U.S. 840. In Robison we reviewed the leading cases establishing the coverage of the Jones Act and found that its coverage has been broadly construed. The Act was passed in 1920. Enactment of the Longshoremen's and Harbor Workers' Compensation Act of 1927 restricted Jones Act coverage to "members of a crew of a vessel." Swanson v. Marra Bros., Inc., 1946, 328 U.S. 1, 66 S.Ct. 869, 871, 90 L.Ed. 1045. In a leading case decided by the First Circuit, Carumbo v. Cape Cod S. S. Co., 1 Cir., 1941, 123 F.2d 991, 995, the Jones Act was interpreted to cover "one who does any sort of work aboard a ship in navigation." The past years have produced a large number of increasingly varied craft that do not operate as vehicles for transportation but serve as movable, floating bases for stationary operations such as oil drilling or dredging. In Robison we found that recent cases have greatly expanded the concepts of what is a "vessel", what is "navigation", and who is a "seaman". We held that when the "vessel" has a special function and the employee operates as a member of the "crew" performing that function, a jury is free to find that the employee is a "seaman".[2] In Texas Company v. Savoie [240 F.2d 675] we held that Savoie was "merely a passenger" on the boat being transported to the platforms where he would perform strictly oil field work and there was no evidence to support a finding that he was a member of its crew. From these two decisions we derive the principle that a man having a part to play in the mission of a special function vessel may be a seaman, while a man who has no such part and who does not participate in conducting the operations of the vessel (whether they relate to transportation or to a special function) but merely *receives* transportation is not a seaman.

On the record before us, we find it next to impossible to decide whether Stanley was a "seaman" or a "passenger." The Halliburton boat transported Stanley from platform to platform where he performed functions similar to those he regularly performed on land. The boat, however, did not serve merely for transportation of personnel. It carried the cement, the cement was mixed on the boat, and the cement was pumped from the boat, as needed, to the platform where Stanley and his men poured it into the pilings. A basic question is whether the operations of the vessel and those of the Scroggins crew of workers should be considered a single function conducted by the vessel or separate functions conducted by the separate crews. The record as it now stands does not preclude a finding that these should be considered a single function. In several respects the evidence bearing on this question is incomplete. Stanley testified that in the daytime "sometimes" he worked on the

2. Summarizing our study of prior cases, we stated: "there is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel (including special purpose structures not usually employed as a means of transport by water but designed to float on water) or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." 266 F.2d at 779.

platform but "sometimes" he stayed on the boat. On a trial of the case, these indefinite statements may be elaborated and made more specific to show more clearly the nature of his function. The record does not show clearly the extent to which the operations are interrelated, requiring cooperation between the workers on the boat and those on the platform, or the extent to which the two parts of the overall operations are customarily performed by the same or different employees and under the direction of the same or different supervisors. These and other matters that would be shown in a trial of the case would provide a better basis for deciding this question and are in our view necessary to reach a proper adjudication.

Stanley's argument that he was a seaman is weakened, but we do not find it defeated, by the fact that he worked on the offshore operations for a period of only four days. Most cases construing the term "seaman" involve individuals who work on their vessels for months or years and are attached for an indefinite period; the opinions often rely on the permanence of the relationship between the worker and the vessel as one factor indicating that he might be considered a seaman. We regard this factor as depending more on the nature of the individual's work on the vessel than on the period of time he has performed that work. The status of a worker depends primarily on the duties and responsibilities assigned to him, and these of course might be changed abruptly. In certain cases when a person comes onto a ship for a brief period of time to perform a work assignment, especially if his assignment does not comprise a part of the regular work involved in the operation of the vessel, it may be proper to conclude that a jury could not find that the worker was a seaman. But when a person goes on a ship on a full-time, twenty-four hour basis to work in the regular operations of the vessel, the fact that his stay on board may last only a few days should not, as a matter of law, deprive him of his status as a seaman and the protections this status gives him.[3] If, therefore, a jury might find that the work on the platforms was an integral part of the operations of the vessel and that Stanley was a working member of that vessel, a jury would be free to find that he was a seaman—notwithstanding the short-term nature of his offshore work, although this is a factor to be considered in reaching their determination.

■■ This holding does not rule out the possibility of a directed verdict. It may be, when the evidence is in, that the district judge will find that the case should be disposed of by a directed verdict. He is free to do so. Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, 496–497. On the other hand, this may prove to be a case when the underlying facts are susceptible of conflicting inferences, and the choice must be left to the jury. The finding that the operations should be viewed as a single function and that Stanley was a member of the vessel's crew would not necessarily mean that Stanley was a seaman. The jury would still have to consider whether the operations of the vessel and the duties of Stanley were such as to make him a "seaman". But the evidence that Stanley at the time of his accident was a member of the crew of the vessel, in the sense that he played a part in the mission of a special function vessel, would bring the case under the rule of Offshore Company v. Robison and provide a sufficient evidentiary basis for the jury to find that Stanley was a seaman.

Since a trial is required to bring out the evidence necessary for a determination of this case, the summary judgment is Reversed and the case Remanded for trial.

CAMERON, Circuit Judge, dissents.

---

3. In one instance the Supreme Court has indicated that a person might be a "seaman" although there was no permanent connection at all with the vessel there involved. Butler v. Whiteman, 1958, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754.