Mary **WOODRUFF**, Individually and on behalf of her minor child Tina Louise Moore, et al., Plaintiffs,

v.

Abe **LAVINE**, Individually and as Commissioner of the New York State Department of Social Services, et al., Defendants.

No. 73 Civ. 5333.

United States District Court,
S. D. New York.

June 4, 1975.

John C. Gray, Jr., Janet L. Benshoof, Brooklyn Legal Services Corp. B, Brooklyn, N. Y., Marttie L. Thompson, Michael A. O'Connor, Community Action for Legal Services, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., of the State of New York, New York City, for defendants Lavine and Ingraham; Amy Juviler, Asst. Atty. Gen., of counsel.

W. Bernard Richland, Corp. Counsel, New York City, for defendant Dumpson; Gayle S. Redford, Asst. Corp. Counsel, New York City, of counsel.

Richard Nadelman, New York City, for Citizens' Committee for Children, amicus curiae.

Paul J. Curran, U. S. Atty. for the Southern District of New York, John Siffert, Asst. U. S. Atty., Borge K. Varmer, Regional Atty., Region II, Gen. Counsel Dept. of Health, Ed. and Welfare, Galen Powers, Asst. Gen. Counsel, Sarah Willis Wilcox, Atty., Marjorie Silver, Asst. Regional Atty., Washington, D. C., amicus curiae.

OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs bring this action challenging what they term the failure of New York State and City officials to implement a mandatory, comprehensive preventive health care program, known as Early and Periodic Screening and Diagnosis Treatment ("EPSDT"), for Medicaid-eligible children under twenty-one years of age. They seek a declaratory judgment that the defendants, who are State and City officials responsible for the administration of the New York State Plan for Medical Assistance, have failed to implement fully EPSDT in violation of various provisions of Title XIX of the Social Security Act, Department of Health, Education and Welfare ("HEW") regulations dealing with EPSDT, and the Fourteenth Amendment of the United States Constitution; and they request various injunctive relief.

The individual plaintiffs are Medicaid-eligible children and their parents, who seek to represent a class of those who allegedly are being denied the benefits of a fully implemented EPSDT program, and the St. John's Day Care Center, a publicly funded organization, which sues on its own behalf and on behalf of its members who are Medicaid-eligible families.[1] On April 12, 1974, this court signed a class action order with the consent of the defendants, designating the class as "all Title XIX eligible children in New York State who have not received" EPSDT.

The plaintiffs move for summary judgment upon their complaint and the defendants' answers and answers to interrogatories. The defendants, in opposing the motion, served affidavits to which plaintiffs have responded. The State and City defendants contend they are now in substantial compliance with the statutory requirements, whereas plaintiffs urge otherwise. Analysis of the applicable statute and regulations is required in order to resolve the issue.

1. *The Statutory and Regulatory Scheme.*

Title XIX of the Social Security Act,[2] enacted by Congress in 1965, created Medicaid, a comprehensive program of medical assistance for the needy. States are not required to participate. A state that chooses to participate in Medicaid administers its own medical assistance program[3] and receives federal financial assistance;[4] however, it is required to comply with the provisions of Title XIX.[5] In 1967 Congress amended Title XIX to require each participating state to include, as part of its medical assistance program:

"such early and periodic screening and diagnosis of individuals who are eligible under the [State] plan and are under the age 21 to ascertain their physical or mental defects, and such health care, treatment, and other measures to correct or ameliorate defects and chronic conditions discovered thereby, as may be provided in regulations of the Secretary."[6]

The regulations implementing EPSDT[7] were not promulgated until four years later, in November 1971. They require a State plan to provide:

"(i) For establishment of administrative mechanisms to identify availa-

1. St. John's Day Care Center's standing to sue on its own behalf is questionable under the standard enunciated in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Whether it can maintain the suit on behalf of its Medicaid-eligible members need not be decided, since those members fall within the class certified by this court.

2. 42 U.S.C. §§ 1396–1396g.

3. *Id.* §§ 1396; 1396a.

4. *Id.* § 1396b.

5. *Id.* §§ 1396a, c.

6. 42 U.S.C. §§ 1396d(a)(4)(B); 1396a(a)(13)(B).

7. 45 C.F.R. § 249.10(a)(1), (2), (3); § 249.10(b)(4)(ii).

ble screening and diagnostic facilities, to assure that individuals under 21 years of age who are eligible for medical assistance may receive the services of such facilities, and to make available such services as may be included under the State plan." [8]

The regulations further establish a timetable for the program by requiring the State to make EPSDT available to eligible children under the age of six by February 7, 1972, and to all eligible individuals under the age of twenty-one by July 1, 1973.[9]

A major item of controversy on this motion centers about what is referred to as an "outreach program." This term appears to be official jargon for a program to publicize EPSDT in an effort to search out eligible children and to bring home to them and their parents its benefits and advantages, and thereby achieve maximum participation. In June 1972 HEW issued guidelines with respect to the implementation of the EPSDT program.[10] The guidelines observed Congress' intent in enacting the 1967 amendments to Title XIX "to require States to take aggressive steps to screen, diagnose and treat children with health problems." [11] Among other matters, the guidelines interpreted the EPSDT regulations as requiring states to have an "outreach program" to inform eligible individuals about the screening program and to encourage them to participate,[12] and as requiring the states to seek out and develop agreements with medical providers.[13] The congressional purpose

to enforce the requirement of an "outreach program" was manifested by an amendment to the Social Security Act in 1972, which provided for a reduction by 1% of the federal payments to a state for its AFDC program if the state failed, after June 30, 1974, (1) to inform all AFDC-eligible families of the availability of EPSDT; (2) to provide for screening services when requested; and (3) to arrange for follow-up corrective treatment where indicated.[14]

2. *Jurisdiction.*

■ In addition to claiming that the State and City defendants have violated provisions of the Social Security Act and binding regulations promulgated thereunder, plaintiffs assert a claim under the Equal Protection Clause of the Fourteenth Amendment. They contend that only one class of children is currently receiving EPSDT services—children under six who are enrolled in neighborhood Child Health Stations in New York City. All other eligible children are, plaintiffs contend, being denied the equal protection of the law.

Whatever the merits of this contention, it is neither "obviously frivolous," "foreclosed by prior decisions," nor "so attenuated and unsubstantial as to be absolutely devoid of merit." [15] The equal protection claim is, therefore, of sufficient substance to support federal jurisdiction under 28 U.S.C., section 1343(3). Jurisdiction attaches to plaintiffs' statutory claims under the doctrine of pendent jurisdiction, since they

---

8. 45 C.F.R. § 249.10(a)(3)(i).

9. 45 C.F.R. § 249.10(a)(3)(iv).

10. Program Regulation Guide, MSA–PRG–21 (June 28, 1972).

11. *Id.* 1.

12. *Id.* 5. In addition to whatever outreach requirement might be gleaned from the regulatory provisions referred to above, the States are under a general obligation to inform Medicaid applicants about their rights under the program, including the "scope of the program" and the "related services available." 45 C.F.R. § 206.10(a)(2). 45

C.F.R. § 249.10(a)(5)(ii) imposes a further requirement that the State assure necessary transportation to and from providers of Medicaid services.

13. Program Regulation Guide, MSA–PRG–21, at 5.

14. 42 U.S.C. § 603(g). *See also* 45 C.F.R. § 205.146(c), promulgated thereunder. This provision is in addition to the general provision establishing sanctions for failing to comply with Title XIX. 42 U.S.C. § 1396c.

15. Hagans v. Lavine, 415 U.S. 528, 536–43, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), and cases cited therein.

"derive from a common nucleus of operative fact." [16]

3. *Plaintiffs' Motion for Summary Judgment.*

■ Plaintiffs, in moving for summary judgment, seek a declaratory judgment that the State and City defendants have failed to comply with EPSDT requirements, and an injunction directing that they do so under penalty of losing federal funds—a rather drastic remedy which in a sense would be self defeating of the purposes of this action, as well as of the statute. Plaintiffs' motion was brought on for argument on August 27, 1974. Plaintiffs sought to prevail upon a contention that as of January 1, 1974, 1,187,217 children in New York State were Medicaid-eligible and entitled to EPSDT, but that less than 10% of the eligible children received EPSDT—in short, that EPSDT was unavailable to the vast majority of eligible children. Plaintiffs argued further that EPSDT would continue to be unavailable to most eligible children because most social service districts had no agreements with EPSDT providers; New York City, where most eligible children resided, had no provider agreements for children over 6 years old, and the only providers for those under 6 years of age in New York City were the Child Health Stations, with a capacity to provide EPSDT to only 50,000 of the eligible children of that group.

The State and City defendants challenged the accuracy of plaintiffs' position and argued that the scope of the program as a practical matter did not permit full and immediate implementation; but that substantial good faith efforts were being made to effect full compliance. The State took issue with plaintiffs' figures—for example, it argued that as of August 1, 1974, 163,297 screenings (15% of the eligible children) had been completed. The State also suggested that the signing of provider agreements is a formality quite irrelevant to the question of the State's compliance with federal requirements, and contended that in fact it was in compliance because EPSDT was available upon demand to all children. The State also maintained that the statutes and regulations did not contain any "outreach" requirement until October 30, 1972, the effective date of the 1% sanction provision enacted by Congress and referred to above; [17] and that the regulation promulgated thereunder [18] does not require that notice be given to eligible children until July 1, 1975. This view of the statutory and regulatory requirements is sharply disputed by plaintiffs and HEW.

The City acknowledged there was a problem in obtaining providers, but contended that the State mandated $20 rate for an EPSDT examination was inadequate to attract sufficient providers. The City also contended that a mass mailing was an ineffective way to encourage the use of preventive health services, and it was therefore implementing a computer notification and tracking system designed to maximize participation by eligible children.

At the time of the oral argument, the State was in the process of issuing new regulations and procedures for the implementation of EPSDT, and had scheduled a statewide planning conference on September 23 and 24, 1974, at which time officials charged with the implementation of EPSDT were to review the new State plan, which in large measure appeared to meet the objections raised by plaintiffs. With all the parties, plaintiffs and defendants, state and local officials, proclaiming that their prime interest was to obtain effective and imme-

16. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See* Hagans v. Lavine, 415 U.S. at 536, 543, 94 S.Ct. 1372, 39 L.Ed.2d 577; Rosado v. Wyman, 397 U.S. 397, 399–405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Aguayo v. Richardson, 473 F.2d 1090, 1102 (2d Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974).

17. 42 U.S.C. § 603(g).

18. 45 C.F.R. § 205.146(c).

diate implementation of the EPSDT program, the court reserved decision to await the results of the State conference, and at the same time invited HEW to submit an amicus brief setting forth its assessment of the legal and factual status of the EPSDT program in New York State. The Citizens' Committee for Children of New York, Inc., a recognized community leader in espousing and protecting children's interests and welfare in this State, had previously submitted an amicus brief setting forth its views as to an appropriate plan of implementation.

Following the initial argument there were a number of developments bearing on the claims of the parties. On September 30, 1974 New York State issued a comprehensive plan for the implementation of EPSDT, the Child Health Assurance Program, referred to as "CHAP," embodied in Bulletin 190. In October 1974 the basic screening fee of $21.20 was raised to $35 for CHAP providers. Thereafter, HEW submitted its amicus brief. The City submitted the implementation plan required of it by Bulletin 190, and on December 31 that plan was approved by the State, subject to the condition that certain information be added. In the light of these developments, the court conferred with the parties in early March, and subsequently the State and City officials submitted supplementary affidavits as to the current status of CHAP.

The plaintiffs responded to the State's enactment of CHAP, the City's implementation of it and the other developments since the initial argument by refining the relief they seek. Recognizing that those events raise factual issues which preclude the granting of the total original requested relief, they now urge

that the court grant them partial summary judgment (1) declaring that the City and State defendants have failed to implement fully the EPSDT program in violation of federal law and regulations; and (2) directing the defendants (a) to implement the CHAP program set forth in Bulletin 190 with certain amendments, and (b) to provide regular detailed reports of progress toward the goals established by Bulletin 190.

While at the time of commencement of suit the State and City may not have been in compliance with EPSDT requirements, the issues on this motion for partial summary judgment as now refined by plaintiffs are to be resolved by reference to the current state of events.[19] The plaintiffs appear to welcome CHAP as a significant advance toward implementation of EPSDT, but criticize the plan as deficient in certain respects. Thus, for example, they contend that the increase in provider fees from $21.20 to $35.00 may not be sufficient to attract providers; that the State's plan fails to require reporting on the results of diagnosis and treatment or the actual treatment performed as a result of referrals; and that the periodicity schedules are contrary to EPSDT requirements. Quite apart from the adequacy of certain aspects of CHAP, plaintiffs express concern about continued implementation of the plan, and accordingly they request that a judgment provide for the submission to the court of regular detailed reports of progress toward the goals established by Bulletin 190. However, HEW, whose interpretation of the statutory and regulatory scheme is entitled to deference,[20] has acknowledged that CHAP would appear to meet EPSDT requirements if it is implemented appropriately, and that the

19. *Cf.* Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Champion Spark Plug Co. v. Reich, 121 F.2d 769, 772 (8th Cir.), cert. denied, 314 U.S. 669, 62 S.Ct. 130, 86 L.Ed. 535 (1941); Stonega Coke & Coal Co. v. Price, 106 F.2d 411, 419 (4th Cir.), cert. denied, 308 U.S. 618, 60 S.Ct. 263, 84 L.Ed. 516 (1939).

20. Griggs v. Duke Power Co., 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Thorpe v. Housing Authority, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

State's schedule for implementation is reasonable.

Both the State and City defendants insist that plaintiffs' criticisms are invalid; moreover, they contend that CHAP is being implemented with dispatch. Under CHAP, Social Service districts were required to submit preliminary plans before the end of 1974, and there is no indication that they have not done so. Additionally, the State, in its most recent affidavit, detailed the steps taken to implement its outreach program. As to virtually all fifty-seven upstate Social Service districts, the process of informing medical assistance families has been started, and target dates for the completion of notification have been established. The State also points to the substantial progress made by the City in carrying out the policies of 190.

The City in its affidavit sets forth that it notified the parents of all AFDC children of the availability of CHAP in March 1975, and planned to begin computerized notification of Medicaid-only eligible children by May 1975. In addition, New York City has begun implementing its plan for continually informing all individuals on a long term basis, both through written material and face to face discussion.

New York City has also supplied details of provider agreements already in effect, and of commitments made by various institutions to enter into such agreements. In sum, the City contends that it is in compliance with the applicable federal statutes and regulations pertaining to EPSDT. The plaintiffs' objections and the defendants' responses thereto obviously raise a number of fact issues.

The full extent to which CHAP has been implemented is not known. But the activities of both the State and the City from the time the matter was first heard by the court to the present indicate they not only recognize their obligation to implement EPSDT, but have taken aggressive action to do so. The implementation of a program such as EPSDT is not without its difficulties. Some idea of these difficulties may be gleaned from the fact that HEW took four years after the passage of the EPSDT legislation to promulgate the implementing regulations. The issues inherent in the legislation and the regulations, and the question of the defendants' compliance with them also present difficult problems. Indeed, plaintiffs' counsel have recognized "the unusual complexity of this case."[21]

With a number of disputed fact issues requiring a trial, it does not follow that as to the remainder, upon which plaintiffs rely as the basis for partial summary judgment, that such truncated relief must be granted. The disputed and the allegedly non-disputed issues are interlaced, and resolution of these issues in their totality will determine the ultimate issue as to whether the State and City are in compliance with EPSDT requirements. Under all the circumstances, this is no case in which to grant partial summary judgment.[22] The court has been advised of the constantly changing status of EPSDT in New York through a stream of affidavits. A trial would not only clarify the current factual situation, but also provide a more adequate basis for the resolution of the various interrelated issues.[23]

Accordingly, the plaintiffs' motion for partial summary judgment is denied.

21. Letter addressed by plaintiffs' attorneys to the court dated October 7, 1974.

22. *See* Kennedy v. Silas Mason Co., 334 U.S. 249, 256–57, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948); United States v. Bethlehem Steel Corp., 157 F.Supp. 877, 879–80 (S.D.N.Y. 1958).

23. *Cf.* Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112–14, 82 S.Ct. 580, 7 L. Ed.2d 604 (1962); A. L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 331, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961); National Automatic Laundry & Cleaning Council v. Shultz, 143 U.S.App.D.C. 274, 443 F.2d 689, 703 (1971).