Kent **ANDERSON**, Plaintiff–Appellant,

v.

Donald **HODEL**, Secretary of the Interior, et al., Defendants–Appellees.

No. 88–4044.

United States Court of Appeals, Ninth Circuit.

Submitted Oct. 4, 1989.

Decided March 7, 1990.

As Amended April 17, 1990.

Erik Rocksund, Columbia Falls, Mont., for plaintiff-appellant.

Byron H. Dunbar, U.S. Atty., George F. Darragh, Jr., Asst. U.S. Atty., Great Falls, Mont., for defendants-appellees.

Before HUG, FARRIS and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

This case involves a dispute over an interpretation of several complex provisions of the Prevailing Rate Employees Act (the "Act"), Title 5 U.S.C. § 5341 *et seq.* (1989), and the relevant parts of the Code of Federal Regulations, 5 C.F.R. Part 532 (1988). Appellant Kent Anderson ("Anderson") is an employee of the Hungry Horse Project (the "Project"), a hydroelectric dam in Montana, operated by the Bureau of Reclamation (the "Bureau"). The Bureau is an appellee, along with the Office of Personnel Management (the "OPM"), the Secretary of the Interior, and the Directors of the OPM and the Bureau.

Until 1981, hourly employees of the Project were part of a bargaining unit represented by the International Brotherhood of Electric Workers ("IBEW") which negotiated the employees wages through a collective bargaining agreement. On June 16, 1981, the hourly employees voted to decertify the IBEW as their bargaining representative, apparently in the hope of obtaining better wages. As a result of the vote, the Bureau was left without established wages. To enable the employees to continue working, the Bureau extended the bargaining agreement rates pending the establishment of a new wage schedule. Thereafter, the Bureau and the Department of Interior asked the OPM for permission to establish a special wage schedule based on the average rate for electricians employed by investor-owned utilities in the area, on the ground that recruitment and retention of qualified employees would be hampered if wages were based on a regular wage schedule.

On September 3, 1981, sorely disappointed by his apparent failure to obtain higher wages after the union's decertification, Anderson filed a complaint in the U.S. District Court, Missoula Division. He sought an order mandating the defendants to conduct a wage survey in compliance with the Prevailing Rate Employment Act, 5 U.S.C. § 5343(a)(3) and Federal Personnel Manual supplement 532–1. He also sought to enjoin the government from adopting a special wage schedule.

Two months later, while Anderson's first action was still pending, the OPM authorized a special schedule, and the Bureau adopted one. The special schedule provided for a continuation of rates established by the collective bargaining agreement negotiated by the union that the employees had repudiated—with two exceptions, both

resulting in reduced employee benefits. First, the previous maximum overtime payments were limited to time and one-half; and second, the shift differential payments were lowered—to a 7½% differential in the case of shifts from 3:00 p.m. to midnight and a 10% differential in the case of shifts from midnight to 8:00 a.m.

By stipulation of the parties, the action filed by Anderson in 1981 was dismissed in April 1983. In consideration for dismissal of the complaint, the appellees, the Department of Interior and the OPM, agreed to continue appellant's pay under the terms of the special wage schedule and the Department further agreed to conduct special schedule surveys of private industry wage practices on a regular basis and to adjust appellant's pay accordingly, in conformity with the Act.

Pursuant to this agreement, the Bureau has conducted wage surveys since 1983. The employees were paid in accordance with these surveys, subject to the pay increase caps set by Congress for federal employees.

In 1985, Anderson filed a Writ of Mandamus requesting that the appellees be found in contempt for failure to comply with the stipulated agreement. Anderson also sought a court order mandating that wage surveys be conducted in accordance with 5 U.S.C. § 5343 and the stipulated agreement. He argued that the survey should have been conducted by the properly designated lead agency, and that the Bureau had never been designated by the OPM as the lead agency for the Project. The writ was dismissed for insufficiency of process.[1] Anderson then filed this action, requesting injunctive relief for violations of 5 U.S.C. § 5341 et seq., and seeking enforcement of the 1983 stipulation.[2] He contends that since the decertification of the union, no valid full scale or interim survey has ever been conducted for the Hungry Horse Project, and that the surveys actually conducted failed to comply with the provisions of 5 U.S.C. § 5341 et seq. He asserts that under the regulations, the wages at twenty area plants should have been considered, rather than only those at the three plants surveyed by the Bureau. 5 C.F.R. § 532.219(b)(1). Anderson also asserts that Malmstrom Air Force Base is the only properly designated lead agency for the Project, and that surveys not conducted by Malmstrom do not comply with the statutory requirement. Finally, he questions the applicability of the wage cap as well as the manner in which it has been applied.

On February 10, 1988, Judge Lovell granted appellees' motion for summary judgment. The order held that Anderson presented no genuine issues of material fact on the questions of wage surveys or pay caps. The district court found that wage surveys were being conducted in compliance with the stipulated agreement, and that Project employees were properly subject to pay caps since they were federal employees. Moreover, the court held that Anderson's failure to exhaust his administrative remedies and to establish any injury were fatal to his claim.

Anderson's motion to alter or amend judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, was served on February 23, 1988, and filed one day later. This motion was denied on July 1, 1988, on the ground that it was "filed" in an untimely manner. On appeal, Anderson argues that Rule 6(a) of the Federal Rules of Civil Procedure dictates that when the period of time prescribed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded from the computation, and if those days are in fact

---

1. In dismissing the writ, Judge Russell Smith noted that the Stipulated Order contained no "injunctive language, either mandatory or prohibitive, nor did it reserve jurisdiction to enforce the order." He, therefore, held that the stipulation was "at most, a contract between the Secretary of the Interior and the plaintiffs."

2. On appeal, Anderson now contends that the stipulated order is not enforceable because it is inconsistent with the Act and applicable regulations. Under his new position, he apparently seeks to repudiate his earlier waiver of back pay between October 1981 and April 1983. Without considering the effect of his attempt to disown the position he asserted in the district court, we note that his action alleges a statutory violation as well as a violation of the stipulation.

excluded from the calculation here, the motion is timely. Appellees do not challenge this argument.

Anderson also appeals the district court's grant of summary judgment. Essentially, he repeats the same contention that he initially asserted in 1981—that the wage survey must be conducted in conformity with 5 U.S.C. § 5341 *et seq.* He further argues that he was not required to exhaust his administrative remedies before appealing the dismissal of his complaint. Finally, Anderson asserts that the district court erred in holding that he failed to show an injury. Although he has never claimed monetary damages, it appears that Anderson would request back pay if it were determined that he is entitled to it after a "proper" wage survey has been conducted by the appropriate lead agency. Moreover, he "put[s] before the Court" the fact that the prevailing rate for power plant workers at Libby Dam, seventy miles from Hungry Horse, is two dollars more per hour on the average than the rate for Hungry Horse employees. In response, appellees contend that Libby Dam employees are part of the Army Corps of Engineers, and would not be included in the Hungry Horse wage survey in any event.

### A.

■ With respect to appellant's 59(e) motion, we hold that the district court erred in ruling that the motion was untimely. The district court entered a judgment for the appellees on February 10, 1989. Rule 59(e) states that "[a] motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Rule 6(a) provides that if the time period prescribed is less than eleven days, then Saturdays, Sundays, and legal holidays are excluded from the calculation of the time period. Anderson's 59(e) motion was served on February 23, 1988, which was within the prescribed period. Furthermore, the motion was filed the following day, also in compliance with the rule that papers be filed "before service or within a reasonable time thereafter." *Fed.R.Civ.P.* 5(d). Accordingly, Anderson's motion was timely served and filed. However, in view of the result we reach *infra*, it is not necessary for us to consider the merits of the motion.

■ We next hold that the district court incorrectly ruled· that Anderson's failures to pursue administrative remedies and to show injury were fatal to his claim. We have previously said that while "exhaustion of administrative remedies is typically required as a condition for judicial review, the requirement is not absolute.... [E]xhaustion is not required ... where pursuit of administrative remedies would be a futile gesture." *Aleknagik Natives Limited v. Andrus,* 648 F.2d 496, 499 (9th Cir. 1980). *See, also, Bendure v. United States,* 213 Ct.Cl. 633, 554 F.2d 427, 431 (1977) (court did not require administrative exhaustion where resort to administrative remedy would have been futile); *Porter County Chapter of the Izaak Walton League of America, Inc. v. Costle,* 571 F.2d 359, 363 (7th Cir.1978) (same), *cert. denied,* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978). Here, the filing of a grievance with either the Department of the Interior or the Bureau would have been futile given the tortuous history of this case. Clearly, Anderson did not have a meaningful administrative remedy. The appellees' defense throughout the proceedings, including the earlier litigation, has been based on the premise that the relevant statutes and regulations at all times authorized them to conduct surveys at their discretion and in the manner they were conducted. There is no realistic possibility that the filing of any administrative appeal would have changed appellees' interpretation of the statutes or the regulations.

Additionally, we have previously held that where a "statute imposes a number of limitations upon the scope of the [agency's] discretion and the manner in which it is to be exercised ... it may be effectively enforced through judicial review without undue interference with the administrative process." *East Oakland–Fruitvale Planning Council v. Rumsfeld,* 471 F.2d 524, 534 (9th Cir.1972). The linchpin of this case is whether the OPM and the Bureau

complied with survey instructions mandated by the statutes and regulations. Certainly, these statutes and regulations contained limitations on the appellees' discretion—the imposition of such limitations was the intended purpose of the 1972 Amendments to the Prevailing Wage Employees Act. *See National Federation of Federal Employees v. Brown*, 207 U.S.App.D.C. 92, 645 F.2d 1017, 1024 (1981) (the intent of the 1972 amendments "was to 'set standards of direction' that would control administrative practices and constrain executive discretion.")

■ We also find the district court's reliance on lack of injury to be in error. Appellant could not show monetary damages until after the surveys were "properly" conducted. However, it is not necessary for him to determine what the results of those surveys would be in order to challenge the failure to conduct them. Proof that appellees failed to follow the statutory procedures governing wage determinations would be sufficient to show injury. At the very least, appellant would be entitled to prospective injunctive relief.

### B.

■ The conclusions we have reached above lead us to the principal question in this case—whether the appellees violated the statute or regulations in their conduct of the surveys and their establishment of appellant's wages. Unfortunately, we would have great difficulty in deciding this question on the basis of the record presented to us. Accordingly, as we explain below, we refrain from doing so. Instead, we remand for fuller development of the record.

The plain language of Rule 56(c) states that the moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, appellate courts, including the Supreme Court, have reversed summary judgments where the lower court "record[s] ha[ve] not been sufficiently developed to allow the court[s] to make ... fully informed decision[s] on particularly difficult and far reaching issues." Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 475 (1984). As Judge Schwarzer points out, a reversal based on an inadequately developed record is distinguishable from a reversal based on the existence of a triable issue of fact. "That the record below may have been inadequately developed does not transform what would otherwise be an ultimate fact more proper for summary judgment into a triable issue." *Id.*

The Supreme Court announced the principles subsequently discussed in Judge Schwarzer's article in 1948. In *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948), the Court vacated a grant of summary judgment and remanded for further findings based on the need for a fuller development of the record. The Court held that in cases involving complex legal issues where the record lacks clarity it is "good judicial administration to withhold decision of the ultimate questions involved in th[e] case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts." *Id.* at 257, 68 S.Ct. at 1034. *Kennedy* raised an issue concerning the applicability of the overtime provisions of the Fair Labor Standards Act, a matter which would have required examining a score of technical contracts and statutory provisions. The Court stated that "[n]o conclusion in such a case should prudently be rested on an indefinite factual foundation" and proceeded to "vacate the judgment below and remand the case to the District Court for reconsideration and amplification of the record in light of the opinion." *Id.* at 256–57, 68 S.Ct. at 1034. *See, also, Shahid v. Gulf Power Co.*, 291 F.2d 422, 429 (5th Cir.1961), *cert. denied*, 370 U.S. 923, 82 S.Ct. 1563, 8 L.Ed.2d 503 (1962) ("Without intimating any conclusion on the merits ..., we nevertheless conclude that it is the part of good judicial administration for the facts in this to be more fully developed before the trial

court determines that there is truly no genuine issue as to any material fact."); *Bingham, Ltd. v. United States*, 724 F.2d 921, 927 (11th Cir.1984) (same); *Eby v. Reb Realty, Inc.*, 495 F.2d 646, 649 (9th Cir.1974) ("In certain cases summary judgment may be inapposite because the legal issue is so complex, difficult, or insufficiently highlighted that further factual elucidation is essential for its prudently considered resolution.") Nothing in *Celotex* suggests that a remand on the ground of an insufficient record would now be improper. Nor do any of the other recent summary judgment cases call into question the principle set forth in *Kennedy. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After a full review of the briefs, motions, documents, affidavits, and transcripts, we conclude that *Kennedy* applies to the case at hand. Further development of the factual record is essential before we construe the complex Prevailing Rate Employees Act. Accordingly, we do not reach a decision on the merits of appellant's cause of action. The following areas of the record require elucidation. While this list may serve to guide the district court, it is not intended to be all inclusive:

1) The nature of the surveys conducted, if any, by the Bureau producing the "applicable regular schedule rates in the Great Falls, Montana Wage area," including the numbers of employers surveyed and the reasons those employers were selected and others omitted.

2) The basis of the authority upon which the Bureau conducted said surveys; the applicable statutes, regulations or rules in the Federal Personnel Manual (the "FPM") which were followed in conducting said surveys; the manner, if any, in which those surveys deviated from the statutes, regulations or the FPM; and if such deviation occurred, a calculation of the wage rates which would have been applicable in 1981 if said surveys had been conducted properly. If such a calculation cannot be made, an explanation of the reasons why and of the best available method for determining those rates.

3) The manner in which the OPM has previously designated lead agencies, in general and in Montana, and the effect of the prior designation of Malmstrom Air Force Base as a lead agency for the Project; and the manner, if any, that any surveys conducted by Malmstrom Air Force may have differed from surveys conducted by the Bureau of Reclamation.

4) The identification of the lead agency for the Libby Dam Power Plant, the surveys conducted to determine that a special schedule was required for Libby, and the differences between the job classifications of Libby's employees and those at the Project.

5) The letter of September 29, 1981, from Morris Simms in the Department of the Interior to the OPM, requesting authority to establish a special schedule. This letter is currently not in the record.

6) The ground on which appellant is subject to the salary increase pay caps; when these caps became applicable to the appellant; and the specific caps that were applied in the years relevant to this case.

7) A clarification of the basis upon which appellant's occupation is subject to the federal wage schedule system and to the Prevailing Wage Employees Act.

8) The manner in which the OPM has, in the past, complied with requirements governing the conduct of special wage schedules as set forth in 5 C.F.R. § 532.231(b), (c), and (d)(1); whether those regulations were followed in this case by the OPM and the Bureau and if not, the nature of the deviation.

9) The exact nature of the pay setting provisions used in the prior collective bargaining agreement, and how the survey methods in those provisions differed from the survey methods described in the statutes, regulations, and the FPM.

Accordingly, we vacate the grant of summary judgment for a fuller development of

the record and remand the case for further proceedings consistent with this opinion.

VACATED AND REMANDED.