**UNITED STATES of America, ex rel.
James M. HAGOOD,
Plaintiff–Appellant,**

v.

**SONOMA COUNTY WATER AGENCY,
Defendant–Appellee.**

**James M. HAGOOD,
Plaintiff–Appellant,**

v.

**SONOMA COUNTY WATER AGENCY,
Defendant–Appellee.**

Nos. 89–16290, 89–16360.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 1991.

Decided April 2, 1991.

Peter M. Smith, Peter Smith & Susan Young Law Offices, P.C., Englewood, Colo., for appellant.

Vernon I. Zvoleff and Peter J. Nova, Bronson, Bronson & McKinnon, San Francisco, Cal., for appellee Sonoma County Water Agency.

Lauren Saunders, Hall & Phillips, Los Angeles, Cal., for amicus curiae Center for Law in the Public Interest; Taxpayers Against Fraud.

Allan J. Joseph, Linda R. Koenig, Connie M. Taevan, Rogers, Joseph, O'Donnell & Quinn, San Francisco, Cal., for amicus curiae Chamber of Commerce of the U.S.A.

Michael Hertz, U.S. Dept. of Justice, Washington, D.C., for amicus curiae U.S.

Before SCHROEDER, CANBY and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

James M. Hagood brought suit under the qui tam provision of the False Claims Act, 31 U.S.C. §§ 3729–3733, alleging its violation by the Sonoma County Water Agency (the Water Agency). The district court dismissed his third amended complaint for failure to state a cause of action. On appeal, the United States filed a brief as amicus curiae, arguing that the district court was incorrect in its reasoning but right in its result, because the court had no jurisdiction of Hagood's complaint. The jurisdictional issue is novel. We decide it in favor of jurisdiction and reverse the district court on the question of whether Hagood stated a cause of action.

## BACKGROUND

In February 1982, as the attachments to Hagood's complaint make clear, Hagood was assistant district counsel to the San Francisco District of the Army Corps of Engineers (the Corps) and was assigned to represent the district counsel to handle the renegotiation of the Warm Springs Dam Water Supply contract with the Water Agency. Hagood came to the conclusion that the proposed cost allocations for the new contract, which would govern the Water Agency's repayment obligations, did not comply with the terms of the 1958 Water Supply Act, 43 U.S.C. § 390b. The cost allocations proposed by the Corps substantially reduced the obligations of the Agency.

Hagood—again according to the documents attached to his complaint—brought his objections to Colonel Paul Bazilwick, Jr., the District Engineer and Contracting Officer for the project. Bazilwick made what he termed "a command decision" to proceed with the cost allocations as proposed and to accept responsibility for the clauses in the contract to which Hagood had objected. Hagood orally refused to draft the contract in this form. He then received an order from the district counsel to comply with Colonel Bazilwick's order or "suffer the consequences of a refusal to follow a direct order from an individual within your direct chain of command."

On March 25, 1982, Hagood put his legal objections to the contract in writing in a letter addressed to Colonel Bazilwick with carbon copies to various other officers of the Corps. The district counsel responded with a memorandum for the files, disputing Hagood's legal points and specifically arguing that the 1958 Water Supply Act did not apply to the Warm Springs Dam, which had been authorized by Congress in 1962. The memorandum of district counsel concluded that Hagood's personal opinion was not the opinion of legal counsel for the district.

According to the allegations of the complaint, Bazilwick was "in the spring" seeking a job with a company later awarded design work by the Water Agency on the Warm Springs Dam and he "used his position as District Engineer to cause an obstruction as to Hagood raising the most fundamental questions on the purported repayment arrangement. A product of that was threats received by Hagood which basically indicated if you want your job with

Army Corps in San Francisco don't ask any questions."

Meanwhile, the contract that Hagood had refused to prepare had been prepared. According to the allegations of the complaint, the Water Agency "used pressure and influence" to expedite its signing without accurate and current cost allocations. The signatory for the Army was William Gianelli, Assistant Secretary of the Army. According to the complaint, Gianelli had been Director of Water Resources for the State of California, had been involved in that capacity with the Warm Springs Dam, and therefore had "a conflict of interest" in acting on the contract. He knew that "an accurate and current cost allocation" had not been prepared, and this knowledge "is related to his expediting" of the contract. The contract was signed by Gianelli on October 1, 1982.

According to the complaint's allegations, the district counsel advised Hagood in April 1982 "that he was no longer considered an attorney in the San Francisco district," and Hagood was told by unnamed other Corps lawyers that "he had better get out of California." In July 1982 Hagood "found a job in Alaska with the Army Corps." It appears from other parts of the complaint that Hagood's new job was as assistant district counsel in Anchorage. In 1985 he transferred to the Sacramento district of the Corps. In 1987 he retired.

### PROCEEDINGS

Pursuant to 31 U.S.C. § 3730(b), Hagood began this suit for himself and for the United States in March 1988. The United States declined to proceed with the suit on its own behalf, but invoking 31 U.S.C. § 3730(c)(2)(A) intervened to ask dismissal of the complaint's claims against two individual defendants, Colonel Bazilwick and the San Francisco district counsel. This motion was granted. Hagood proceeded as the sole plaintiff as provided by 31 U.S.C. § 3730(c)(3). He amended his complaint so that it named only the Water Agency. The defendant moved to dismiss. The motion was granted with leave to amend.

Hagood's third amended complaint alleged that the Water Agency "knowingly presented, caused to be presented and conspired to present the following false information," to wit, "that a true and correct, and current and accurate cost allocation was contained in the 1982 contract," and various other misstatements and material omissions relating to the contract. The resulting damage to the United States was asserted to be at least $60 million. The Water Agency was further charged, as already noted, with using pressure and influence to expedite the signing of the contract based on this false information.

After a hearing, the district court on September 25, 1989 dismissed with prejudice Hagood's third amended complaint for failure to state a claim for which relief could be granted. In a memorandum opinion the district court analyzed Hagood's complaint as essentially self-contradictory: the complaint alleged fraud by the defendant but also alleged that "the high government officials responsible for taking the action" knew of the facts that made the complaint false. The complaint failed to charge, "with the specificity necessary under Rule 9(b) of the Federal Rules of Civil Procedure," these officials with "acting with any fraudulent intent" toward the government. The district court observed that the closest Hagood came to alleging fraud was his allegations about Bazilwick and Gianelli but that Hagood made "no connection between these allegations and any direct form of wrongdoing by the government employees."

The district court found the facts to be similar to those of *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 808–10 (D.Utah 1988), and so came to the same conclusion as *Boisjoly*, that it was impossible to say that the government had suffered the kind of injury necessary to impose liability under the False Claims Act. In amplification of this conclusion, the court observed that the United States is not necessarily damaged every time its officers agree to a procedure that diminishes money coming into the Treasury, because the officers may have acted to promote nonmonetary interests of the United States—

for example, here, to increase water storage facilities. Moreover, the court noted, "it is difficult to see how any damages to the United States are caused by false statements when officials, with full knowledge of the falsity of the statements, proceed to take an action depriving the government of funds notwithstanding the false statements."

Hagood appealed to this court. The United States was permitted to file a brief amicus curiae. This brief argued that the district court was mistaken in its reasoning for two reasons: under the False Claims Act penalties are recoverable even if the United States sustains no damage from the false claim; and the government's knowledge of a claim's falsity does not preclude recovery. At the same time the brief contended that the district court lacked jurisdiction of Hagood's claim because of "the plain language" of 31 U.S.C. § 3730(e)(4).

## ANALYSIS

*Jurisdiction.* Exclusions of federal jurisdiction, set out in the 1986 amendments to the False Claims Act, are unusually precise:

No court shall have jurisdiction over an action brought by a former or present member of the armed forces ... against a member of the armed forces arising out of such person's service in the armed forces. 31 U.S.C. § 3730(e)(1)

No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought. *Id.* (e)(2)(A).

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information. *Id.* (e)(4)(A).

For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information. *Id.* (e)(4)(B).

■ The jurisdictional bar that the United States contends is applicable is the last. The United States argues that when Hagood became involved in preparation of the disputed contract he was engaged in an "administrative investigation," so that the words of the statutory exclusion are met. The United States further argues that the "public disclosure" required by the statute occurred when Hagood as a government employee "disclosed" to himself as a member of the public the information on which he based his suit.

To say that the argument of the United States is tortured is to state the obvious. Even if we were to construe "investigation" broadly, as the United States argues, it requires a major extension of the term to hold that it includes the preparation of a contract by a lawyer. Without deciding whether such a liberal extension of the statutory language should be made, we hold that no "public disclosure" was made. The public disclosure that the statute requires is public disclosure *in* an administrative investigation. The United States concedes that one government employee telling another government employee is *not* public disclosure. The notion that we should subdivide Hagood into his governmental self and his nongovernmental self is too metaphysical a contention for the interpretation of a plain congressional enactment. Hagood does not base his suit on any public disclosure made to him or to anyone else. He bases his suit on information that he acquired in preparing the contract; the information was not publicly disclosed.

The United States has neither case law nor legislative history to support its extraordinary reading of a remarkably explic-

it jurisdictional statute. We join the First Circuit in rejecting the government's position. *United States ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17 (1st Cir.1990).

Basically the United States takes its position in surprise and chagrin at a change in the law made by the 1986 amendments. Although it is not strictly necessary to our decision, we review the history that appears to account for the government's present position. In *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 63 S.Ct. 379, 87 L.Ed. 443 (1943), it was held that an informer might recover in a qui tam action under the False Claims Act even if he had "contributed nothing" to the discovery of the fraud but had derived all his information from the government's criminal indictment that set out all the facts now relied on in the qui tam action. The Court noted that under the terms of the act "any person" could bring a suit and that the Senate sponsor of the law had observed that even a district attorney, deriving all his knowledge from his official position, could bring a qui tam suit under the law. *Id.* at 546, 63 S.Ct. at 385. The government objected to such a construction of the law with objections of policy. The Court told the government its objections should be addressed to Congress: "the entire force of these considerations is directed solely at what the government thinks Congress should have done rather than at what it did." *Id.* at 546–547, 63 S.Ct. at 385.

Immediately after *Hess* was decided, Congress did amend the law to exclude "parasitical suits," i.e., those where the government already possessed the information underlying the qui tam action. "The court shall have no jurisdiction," the amendment provided, "whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer, or employee thereof, at the time such suit was brought." 31 U.S.C. § 232(C) (1976). If this language were in place today, Hagood would be barred. *Pettis ex rel. United States v. Morrison–Knudsen Co.*, 577 F.2d 668 (9th Cir.1978). But this language disappeared from the statute with the 1986 amendments.

Citing S.Rep. No. 345, 99th Cong., 2d Sess. (1986), U.S.Code Cong. & Admin. News 1986, p. 5266, the United States concedes that the purpose of the 1986 amendments was to repeal overly-restrictive court interpretations of the qui tam statute, which had prohibited not only suits by private citizens based on information obtained by the government, but also suits brought by those who had information independently of the government. Clearly, however, what Congress found overly-restrictive interpretation went further than what the government now finds desirable. The new jurisdictional bars were carefully crafted. They were framed by those surely aware of *Hess*, its holding that "any person" means "any person," and its declaration that arguments about the limits on suits by informers should be addressed to Congress not the courts. All that was said in *Hess* is true here. The government has some good policy arguments. "But the trouble with these arguments is that they are addressed to the wrong forum." *Hess*, 317 U.S. at 547, 63 S.Ct. at 386.

There is, of course, no need for Hagood to show that he is "the original source" of the information. That statutory phrase in 31 U.S.C. § 3730(e)(4)(B) comes into play only if an exception is sought to the bar of 4(A). As the bar of 4(A) does not apply, there is no need to invoke the exception.

*The Sufficiency of the Complaint.* In so many words, Hagood alleges that the Water Agency knowingly presented and caused to be presented and conspired to present a false claim. That a contract based on false information is a species of false claim is undisputed. The contention of the Water Agency, relying on the district court's opinion, is that Hagood's charge is negated by the rest of his complaint which says that the relevant government officials knew that the information was false.

◼ Aided by the brief of the United States, of which the district court did not have the benefit, we hold that Hagood has not engaged in an exercise of self-contradiction. To be sure, he comes very close to

it, especially when the documents annexed to his complaint are considered, for in them it appears that the contract was prepared not by the Water Agency but by the Corps. Nonetheless, reading the complaint generously, as our precedents dictate should be done, it is evident that what the complaint alleges is that the Water Agency played an active part in having presented for signature a contract that the Water Agency knew was based on false information.

What is crucial—and what must be proven at trial—is that the Water Agency knew that the information was false. The statute emphasizes that the act, for which the civil claim may be filed is to "knowingly" present or cause to be presented "a false or fraudulent claim," 31 U.S.C. § 3729(a)(1), or to "knowingly" make, use or cause a false record or statement to be made to get a false or fraudulent claim paid, *Id.* (a)(2), or to "knowingly" make, use, or cause a false record or statement to be made to "decrease an obligation" to pay the government. *Id.* (a)(7). The emphasis on "knowing" and "knowingly" is reinforced by their statutory definitions. *Id.* (b).

■ Innocent mistake is a defense to the criminal charge or civil complaint. So is mere negligence. The statutory definition of "knowingly" requires at least "deliberate ignorance" or "reckless disregard." To take advantage of a disputed legal question, as may have happened here, is to be neither deliberately ignorant nor recklessly disregardful. But that the Water Agency did no more than that cannot be determined from the complaint.

■ That a defendant has disclosed all the underlying facts to the government may, the United States in its brief concedes, show that the defendant had no intent to deceive. But what constitutes the offense is not intent to deceive but knowing presentation of a claim that is either "fraudulent" or simply "false." 31 U.S.C. § 3729(a)(1) and (2). The requisite intent is the knowing presentation of what is known to be false. That the relevant government officials know of the falsity is not in itself a defense. *United States v. Ehrlich,* 643 F.2d 634, 638–639 (9th Cir.1981). *Boisjoly*

may be defensible on its facts; its dicta are an unreliable guide.

As the brief of the United States points out, the knowledge possessed by officials of the United States may be highly relevant. Such knowledge may show that the defendant did not submit its claim in deliberate ignorance or reckless disregard of the truth. But this comforting conclusion for the Water Agency cannot be reached by mere inspection of Hagood's complaint. Only at the stage of trial or summary judgment will it be possible for a court to say, for example, that the Water Agency did merely what the Corps bid it do, that the Water Agency had no knowledge that its contract was based on what Hagood has alleged was false information.

The damages sustained by the United States also can not be determined from the complaint. It may be, as the district court observed, that no damages were suffered when officers of the United States knowledgeably decided to proceed with the contract. The complaint alone does not say what the balance of benefits and harms was; it alleges damages of $60 million. If such damages are shown to have occurred by reason of a false claim, it would be for the defendant to show how they were offset.

■ A civil penalty of between $5,000 and $10,000, and the costs of the civil action, are also recoverable under the statute, 31 U.S.C. § 3729(a). No damages need be shown in order to recover the penalty. *See Rex Trailer Co. v. United States,* 350 U.S. 148, 153, n. 5, 76 S.Ct. 219, 222, n. 5, 100 L.Ed. 149 (1956).

■ *Estoppel.* Estoppel is an affirmative defense. Fed.R.Civ.Proc. 8(c). It was not here pleaded. If the opinion of the district court is construed as holding that the United States was estopped by the knowledge of its officers, the district court's opinion would rely on a defense not before it. In any event, estoppel will not lie against the United States "on the same terms as any other litigant." *Heckler v. Community Health Services,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42

(1984). The defendant's "inability to retain money that it should never have received in the first place" is not the kind of detrimental reliance that justifies estoppel against the government. *Id.* at 61, 104 S.Ct. at 2225. Such is this case, if Hagood's allegations prove to be good. "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of the law.... [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Id.* at 63, 104 S.Ct. at 2225. Hagood claims that the Water Agency proceeded unscrupulously, indeed with knowledge of the falsity of its claim, with knowledgeable government officials abetting its behavior. Hagood's allegations constitute a cause of action.

REVERSED and REMANDED.