17 F.3d 397
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America ex rel. Ronald DAVIS, Plaintiff-Appellee,
v.
DYNA CORPORATION, Defendant-Appellant.
 No. 92-56318.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1994.
Decided Feb. 17, 1994.
 
 Before: D.W. NELSON, REINHARDT, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Qui tam defendant Dyna Corporation ("Dyna") appeals the district court's denial of attorneys' fees incurred in defending a False Claims Act suit following the government's decision to intervene. The district court dismissed the case with prejudice. Dyna contends that the district court erred in holding that the government's position was substantially justified under the Equal Access to Justice Act. See 28 U.S.C. Sec. 2412(d)(1)(A). Dyna also requests that the case be remanded to the district court for further proceedings in light of newly discovered evidence. We affirm.
 
 
 3
 Ronald Davis, a former employee of Dyna, brought this case under the False Claims Act alleging that the company had shipped splints to the government which failed to comply with their contractual specifications. After receiving several extensions of time in order to investigate these claims, the government elected to intervene on June 12, 1989. In its amended complaint, the government alleged that Dyna "knowingly furnished splints that did not comply with the contract requirements and did not conform to Dyna's own drawings, specifications, standards, and quality assurance practices." As weaknesses in the government's case became apparent towards the end of 1990, the government sought to negotiate a settlement. These efforts eventually failed, and the government moved to dismiss the case without prejudice on June 27, 1991. On November 20, 1991, the district judge dismissed the case with prejudice. However, the district court denied Dyna's timely application for attorneys' fees.
 
 
 4
 We conclude that the district court did not abuse its discretion in deciding that the government's position was substantially justified.[1] The contract between Dyna and the government prohibited "imperfections" in metal parts, regardless of whether these imperfections affected the functionability of the splints. Throughout the litigation, the government had a reasonable basis to believe that Dyna knowingly shipped splints with cracked parts.
 
 
 5
 To determine whether the government's position was substantially justified a court must, under the totality of the circumstances, decide whether the position had a reasonable basis in both law and fact. Bullfrog Films, Inc. v. Wick, 959 F.2d 782, 784 (9th Cir.1992). The court looks to the government's position as a whole rather than focusing on individual positions taken at different points of the litigation. See Commissioner, I.N.S. v. Jean, 496 U.S. 154, 159, 161-62 (1990). In this case, the government's central claim was that Dyna was liable to the government under the False Claims Act. This statute provides that anyone who knowingly presents a false or fraudulent claim to the government for payment shall be liable for a civil penalty of up to $10,000, plus treble damages.[2] For purposes of the Act, " 'knowingly' requires at least 'deliberate ignorance' or 'reckless disregard.' " United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir.1991). The statute specifically provides that "no proof of specific intent to defraud is required." 31 U.S.C. Sec. 3729(b) (Supp.1993).
 
 
 6
 Although the government asserts several possible theories on which its position may have been substantially justified, we find one dispositive. The government argues that Dyna shipped splints with cracked lock wheels and that these cracks constituted imperfections which the contract prohibited. The contract provided that:
 
 
 7
 Metal parts shall be free from burrs, pits, corrosion, dirt, grease, foreign matter or other imperfections. Cloth and foam components shall be free from cuts, tears, ravels, dirt, grease, foreign material, or other defects.
 
 
 8
 The only reasonable interpretation of this contract provision is that metal parts must be free of imperfections in their construction or appearance, whether or not they have any effect on the serviceability of the splint. As the examples listed in the provision make clear, metal parts containing cracks violate the contract. Such seemingly innocuous faults as dirt and grease count as "imperfections," as do irregularities such as burrs and pits, which are quite similar to cracks. Moreover, the contract's analogous provision prohibiting "defects" in cloth and foam components bars such imperfections as cuts and tears, as well as dirt and grease. The government clearly had at least a reasonable basis in law for its theory that the knowing submission of splints with cracked lock wheels violated the False Claims Act.[3]
 
 
 9
 We also conclude that the district court did not abuse its discretion in finding that this theory had a reasonable basis in fact. The government possessed a substantial amount of evidence that Dyna sold the government splints with lock wheels which contained cracks. The government interviewed several former Dyna employees who acknowledged that Dyna had changed from stainless steel to powdered metal lock wheels. A number of these former employees stated that the powdered metal parts were subject to cracking, and that they repeatedly failed when tested.[4] The government also conducted its own tests of the splints. An inspection of 66 unused Hare Traction Splints which Dyna had delivered under its contract revealed that 12 of the splints had cracked locking wheels. In the investigator's opinion, these cracks constituted a major defect in the splints. He concluded that 21% of the sample he examined were defective, far in excess of the "[n]ormal acceptable limits" of "1% for major and 2.5% for minor defects." Although the government did not conduct functional testing prior to filing the complaint, such testing would not have altered the conclusion that the cracks were impermissible imperfections. We believe that the government's investigations fully justified its decision to intervene and file an amended complaint in this action.[5]
 
 
 10
 Dyna argues, however, that even if the government was substantially justified in its initial decision to proceed with the action, there was no substantial justification for maintaining the suit after two potential witnesses recanted the statements they had earlier made to government investigators. Although the recantations certainly weakened the government's case on the issue of scienter,[6] the government still had a reasonable basis in fact for its claim. The government's inspection of splints which Dyna had delivered to the government showed quite clearly that Dyna had shipped splints with cracked metal parts, and interviews with former Dyna quality control inspectors, as well as company records (recovered during a search of Dyna's premises), indicated that Dyna's senior vice president approved a shipment of splints to the government after being informed that the wheels were cracking.[7] Although the recantations of the witnesses no doubt spurred the government to seek a settlement, they did not remove all reasonable basis from the government's claim.[8]
 
 
 11
 Dyna also argues that this case should be remanded to the district court for further proceedings. It seeks to depose and/or cross-examine the government's trial attorney, as well as the witnesses who submitted declarations on behalf of the government in its fee request. At a minimum, Dyna seeks a remand for the district court to consider Freedom of Information Act material the company has subsequently received. We reject Dyna's invitation to continue these proceedings any longer. None of the contentions Dyna proposes to assert on remand would undermine the conclusion that the government's position was substantially justified. Accordingly, we need not reach the government's argument that the statute prohibits all discovery in fee proceedings under the Equal Access to Justice Act.
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 A district court's decision to deny attorneys' fees under the E.A.J.A. is reviewed for abuse of discretion. See Pierce v. Underwood, 487 U.S. 552, 562 (1988); Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir.1990)
 
 
 [2]
 See 31 U.S.C. Sec. 3729(a)
 
 
 [3]
 This is not to say that a government contractor violates the False Claims Act anytime it ships the government goods containing the slightest faults. A truly de minimis imperfection in a small number of goods (rather than the significant cracking in 21% of the lock wheels inspected here) would likely not implicate the Act. Moreover, only "knowing" or "reckless" submission of false claims violates the Act. A contractor that seeks payment for goods which violate the contract will not be subject to liability unless the government can show that the Act's scienter requirement is satisfied
 
 
 [4]
 Dyna criticizes the government for relying on the statements of former Dyna employees in deciding to prosecute this action. However, the former employees' statements were corroborated by the government's test as well as the documents recovered during the search
 
 
 [5]
 Moreover, the contract prohibited defects which impaired the serviceability of the splints. If the government had a reasonable basis in fact to believe that the cracked lock wheels impaired the operation or safety of the splints, then it had reasonable basis in law to conclude that the knowing submission of the splints violated the False Claims Act. While it is not necessary to our decision, we conclude that the inspections and other investigations performed by government agents provided a reasonable basis in fact--at least at the time the government filed its amended complaint--for the government to conclude that the cracked lock wheels impaired the serviceability of the splints
 
 
 [6]
 These witnesses had told government investigators that high corporate officials had made the decision to ship the splints with the cracked metal parts. However, one later said in his deposition that he could not remember the company having allowed a cracked part to go out, and the other testified in a related trial in state court that she had never been instructed to ship any splints with defective parts
 
 
 [7]
 Dyna argues that the government cannot rely on the evidence obtained during the search and the interviews with two of Dyna's former quality assurance personnel because these events occurred after the government decided to intervene. However, as the government rightly notes, Dyna suffered no prejudice from the decision to intervene. Pursuant to the stipulation, Dyna was not obliged to file any answer until the government filed an amended complaint. The parties entered into this stipulation precisely to give the government more time to investigate
 
 
 [8]
 In addition, the government's post-complaint determination that the cracks might not have impaired the splints' serviceability did not remove the basis for the government's "imperfections" theory. Thus, we need not consider whether to expand the record on appeal to permit consideration of the Freedom of Information Act material which shows that a government test on August 15, 1990 determined that the cracks did not affect the splints' serviceability