OPINION
 

 RICHARD MILLS, District Judge:
 

 False Claims Act.
 

 Bench trial.
 

 Judgment for defendants.
 

 I. FACTS
 

 Sparks & Wiewel Construction Company (“S & W”) is a partnership in the business of constructing and repairing heavy highways and bridges. William Rueter, a former employee of S & W, brought this action against Richard Sparks and David Wiewel, d/b/a Sparks & Wiewel, under the
 
 qui tam
 
 provisions of the False Claims Act, 31 U.S.C. § 3729
 
 et seq.
 

 [1]
 

 Rueter claimed Defendants knowingly submitted false hours, wage rates, and federal tax and FICA withholdings for the purpose of acquiring federal funds under false pretenses.
 

 From September 1989 through May 1990, Defendants were contractors with respect to Project No. ACBHF — 83(6), in Pike County, Illinois, for highway and bridge work. The project was federally funded. Therefore, the wages paid were subject to the minimum prevailing standards pursuant to the Davis-Bacon Act, 40 U.S.C. 276a
 
 et seq.
 
 Section 2 of the Copeland Act, 40 U.S.C. § 276c, requires contractors of federally funded projects to submit weekly certified payroll records of wages paid to their employees to assure that minimum wages prevailing in the area are being paid. The contract for the Pike County Project contained a document titled the “General Wage Decision” which stated the wages to be paid to various classes of workers on this project.
 

 Plaintiff worked for S & W on the Pike County project as an operating engineer and ran the heavy equipment on the dozers, scrapers and motor graders. The prevailing wage for this job classification was $18.00 an hour. For approximately one-half hour of every day, Plaintiff would perform maintenance work on the machines. Maintenance work consisted of checking levels of water and oil in the machines and greasing the machines. Because the “General Wage Decision” did not provide a classification nor a prevailing wage rate for maintenance work, Richard Sparks (“Sparks”), the partner in charge of determining wage rates for employees, believed that S & W was not required, under the Davis-Bacon Act, to pay prevailing wages for time spent on maintenance. Therefore, as was S & Ws practice and policy, Plaintiff was paid $8.00 an hour for the time spent performing maintenance work.
 

 This lawsuit arose, however, because of the way Sparks reported time and wages on the
 
 *638
 
 certified payroll record and the way the employees were actually paid. Sparks was only reporting the $18.00 an hour wage rate on the certified payroll record and not reporting the $8.00 an hour paid for maintenance work, even though one half of the time Sparks included the time employees spent performing maintenance work on the certified payroll record. For example, an employee may have worked 8 hours as a machine operator and one hour on maintenance. Approximately one half of the time, the certified payroll record would indicate only that the employee worked 7 hours at $18.00 an hour; other times it would reflect that the employee worked 8 hours, but at the $18.00 an hour rate for
 
 all
 
 8 hours, rather than what the employee was actually being paid, which was 7 hours at $18.00 an hour and one hour at $8.00 an hour.
 

 A description of how payroll records were completed is necessary. Sparks completed all payroll and wage records manually. The certified payroll record required the following information: employee name and address, days and hours worked, total hours worked, overtime hours worked, rate of pay, amount earned, federal and state withholding, net pay. The information used to complete the certified payroll record came from the foreman’s worksheet, titled the “Daily Cost Report,” which was completed on a daily basis by the foreman. This worksheet provided information about the number of hours an employee spent in any given job classification. Information to complete the employees’ actual paychecks was gathered from the employees’ time cards. The time cards were not used to complete the certified payroll record because it would be very time consuming due to the number of employees and the different job classifications the employeés performed.
 

 II. ANALYSIS
 

 The False Claims Act (FCA) imposes liability on any person who “knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval.” “Knowing” and “knowingly”, for purposes of this section, mean that a person
 

 (1) has actual knowledge of the information;
 

 (2) acts in deliberate ignorance of the truth or falsity of the information; or
 

 (3) acts in reckless disregard of the truth or falsity of the information.
 

 No proof of specific intent to defraud is required.”
 

 31 U.S.C. § 3729(b).
 

 Plaintiff must show the required scienter to state a claim under the False Claims Act. Negligence is not actionable.
 
 Hindo v. University of Health Sciences,
 
 65 F.3d 608 (7th Cir.1995),
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 915, 133 L.Ed.2d 846 (1996). “ ‘The requisite intent is the knowing presentation of what is known to be false,’ as opposed to innocent mistake or mere negligence.”
 
 United States ex rel. Anderson v. Northern Telecom, Inc.,
 
 52 F.3d 810 (9th Cir.1995), citing
 
 United States ex rel. Hagood v. Sonoma County Water Agency,
 
 929 F.2d 1416, 1421 (9th Cir.1991).
 
 See also X Corp. v. Doe,
 
 816 F.Supp. 1086, 1093 (E.D.Va.1993) (“The heart of fraud is an intentional misrepresentation. A violation of a regulatory provision, in the absence of a knowingly false or misleading representation, does not amount to fraud.”)
 

 At most, Sparks was only negligent in this case.
 

 Plaintiff presented only one witness in support of his claim — Richard Sparks, the defendant. To succeed in his claim under the FCA, Plaintiff must demonstrate, by a preponderance of the evidence, that the Defendants had either actual knowledge, acted with deliberate ignorance, or acted in reckless disregard for the truth. Sparks did not have actual knowledge that he was presenting a false claim to the Government. He testified that he thought maintenance hours need not be included on the certified payroll record because the “General Wage decision” did not provide a classification for maintenance. Further, S & W followed this practice for 25 years.
 

 Similarly, the evidence does not demonstrate that Sparks acted in deliberate igno
 
 *639
 
 ranee of the truth or falsity of the information nor in reckless disregard of the truth or falsity of the information. S & W was audited in October 1990 by the United States Department of Labor to ensure compliance with the Davis-Bacon and Related Acts. S & W was informed of areas of non-compliance, but the audit did not indicate that the proper rate for maintenance work was not being paid to the employees. In fact, it was not until 1995 that the Federal Department of Labor informed S & W that maintenance time should be paid the same scale as the operator’s classification. Sparks did not know, or have reason to know, until 1995 that S & W’s procedure of paying maintenance hours at the rate of $8.00 an hour was improper.
 

 The evidence presented to the Court does not rise to the level of “deliberate ignorance” or “reckless disregard.” Plaintiff has failed to meet his burden. This Court concludes from the evidence that the inclusion of maintenance hours on the certified payroll records was due to negligence.
 

 Ergo,
 
 for the above reasons, Defendants’ Motion for Directed Verdict (d/e 66) (treated as a motion for judgment as a matter of law pursuant to Fed.R.Civ.P 50) is ALLOWED, with each party to bear its own costs.
 

 CASE CLOSED.
 

 [1]
 

 . The FCA allows a private individual to bring an action in the name of the Government after providing the government an opportunity to proceed with the action. 31 U.S.C. § 3730(b). If the private individual is successful, he shares the judgment with the Government as a bounty. 31 U.S.C. § 3730(d).