183 F.3d 1088 (9th Cir. 1999)
 UNITED STATES OF AMERICA, ex rel. PLUMBERS AND STEAMFITTERS LOCAL UNION NO. 38 and LAWRENCE J. MAZZOLA, Plaintiffs-Appellants,
v.
C.W. ROEN CONSTRUCTION CO.; BRUCE A. ROEN; and JERALDINE C. BREAULT, Defendants-Appellees.
 No. 97-17204
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 13, 1999--San Francisco, California
Filed July 13, 1999
 
 John J. Davis, Jr., McCarthy, Johnson, & Miller, San Fran- cisco, California, for the plaintiffs-appellants.
 James P. Watson, Stanton, Kay & Watson, San Francisco, California, for the defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Susan Illston, District Judge, Presiding. D.C. No. CV-96-02976-SI.
 Before: Mary M. Schroeder, Stephen Reinhardt, and Barry G. Silverman, Circuit Judges.
 Opinion by Judge Reinhardt; Dissent by Judge Silverman
 REINHARDT, Circuit Judge:
 
 
 1
 In this quitam action, Plumbers and Steamfitters Local No. 38 alleges that C.W. Roen Construction Company and its president and office manager violated the False Claims Act (FCA), 31 U.S.C. SS 3729-33, by certifying falsely that the Company had paid the applicable prevailing wage as required by the Davis-Bacon Act and related federal laws, when in fact it had paid its employees at a lower rate. The district court found that because the Department of Labor had not conducted an area practice survey for the area in question, and because the Department's other efforts to establish the prevailing wage were "uncertain," no reasonable juror could find that the defendants acted with the scienter necessary to violate the FCA. The court then granted summary judgment for the defendants. We conclude, however, that an area practice survey is not necessary in all cases to establish the prevailing wage, and that the status of the Department of Labor's determinations did not compel the conclusion that the plaintiffs could under no circumstances prove that the defendants acted with the requisite scienter. Given these determinations, and the presence of complex legal and factual issues that are not resolvable on the current state of the record, we hold that the district court erred in granting summary judgment to the defendants. We therefore reverse and remand for further proceedings.
 
 Background
 
 2
 On September 1, 1994, C.W. Roen Construction Company entered into a construction contract with the City of Santa Rosa, California, to make improvements to the Laguna Wastewater Treatment Plant. (ER 158). The Laguna Plant was a federally funded project, and hence subject to the prevailing wage and reporting requirements set forth in the Davis-Bacon Act, 40 U.S.C. SS 276a, et seq., and the Copeland AntiKickback Act, 40 U.S.C. S 276c. These statutes required Roen to pay its workers prevailing wages, and to submit weekly statements reflecting the wages it paid. See 40 U.S.C. S 276a & 276c. Under federal law, Roen was also required to certify its payments of the applicable wage rates. Under the relevant regulations:
 
 
 3
 Each payroll submitted [to the Department of Labor] shall be accompanied by a "Statement of Compli ance," signed by the contractor or subcontractor or his her or agent who pays or supervises the payment of persons employed under the contract and shall certify the following:
 
 
 4
 . . .
 
 
 5
 (3) That each laborer or mechanic has been paid not less than the applicable wage rates . . . .
 
 
 6
 29 CFR S 5.5(a)(3)(ii)(B). The regulations also dictate that:
 
 
 7
 (D) The falsification of any of the above certifica tions may subject the contractor or subcontractor to civil or criminal prosecution under . . . section 231 of title 31 of the United States Code [The False Claims Act].
 
 
 8
 29 C.F.R. S 5.5(a)(3)(ii)(D). It is undisputed that Roen did submit the certifications as required by federal law. The plaintiffs allege, however, that Roen's certifications amounted to false statements because the Company paid employees performing certain types of work less than the prevailing wage rate.
 
 
 9
 At issue in this case is the classification and payment of workers who performed certain types of piping work on the Laguna project (namely "mechanical, pressure, process, soil, waste, vent, potable, and non-potable water piping " (Complaint P 14, ER 4)) between August 15, 1994 and February 1997. Roen classified workers who performed this piping work as Laborers, and paid them at the Laborer wage rate. It then certified that it was paying these workers the appropriate wage rates under Davis-Bacon. The plaintiffs claim that Roen thereby misclassified these workers; according to the plaintiffs, all workers who perform this type of piping work on wastewater treatment plants in Northern California must, under Davis-Bacon, be classified as Plumbers & Steamfitters and paid at the higher Plumbers & Steamfitters wage rate. The plaintiffs argue that as a result of misclassifying and underpaying the workers, Roen violated the FCA.
 
 
 10
 The plaintiffs point out that in May 1992, the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, AFL CIO, Pipe Trades District Council No. 51 (UA) and the Northern California District Council of Laborers signed a jurisdictional agreement (1992 Agreement) that resolved the classification of piping workers on Northern California water treatment plant projects. According to the 1992 Agreement:
 
 
 11
 [i]n the construction of water treatment plants, wastewater (i.e., sewage) treatment plants, water rec lamation plants, and all pumping facilities related to such plants, for work performed both inside and out side of buildings, the prevailing rate of per diem wages established for Plumber-Steamfitter-Pipefitter is paid to those employess who perform all piping work of every description and material (except as noted in paragraph 2), including but not limited to . . . all process piping, soil, waste, vent, . . . domestic and process water piping, . . . all mechanical process equipment.
 
 
 12
 (ER 4). Paragraph 2 of the 1992 Agreement states that "[t]he prevailing rate of per diem wages established for Laborers is paid to those employees who, on the facilities decribed above, perform the installation of non-pressurized surface and storm drain piping . . . ." (ER 40). That is, according to the 1992 Agreement, the workers who performed the piping work at issue in this case (again, "mechanical, pressure, process, soil, waste, vent, potable, and non-potable water piping " (Complaint P 14, ER 4)) were classified as Plumber-SteamfitterPipefitters.
 
 
 13
 In January 1994, the District Director of the U.S. Department of Labor's Wage and Hour Division, Frank Conte, determined that the 1992 Agreement between the Plumbers and the Laborers established the appropriate classifications and wages for work done on water treatment plants in Northern California. In a letter to John Davis, counsel for the Plumbers and Steamfitters Local 38, the District Director wrote that:
 
 
 14
 As of September, 1992, the agreement [between Northern Californi District Council of Laborers and Pipe Trades District Council No. 51] establishes the prevailing practice in Northern California for the construction of water treatment plants, wastewater treatment plants, water reclamation plants and all pumping facilities related to such plants in Northern California. For contracts for the construction of such plants awarded after September, 1992 and subject to Davis-Bacon and Related Acts the Wage and Hour Division will require the payment of prevailing wages in accordance with the agreement.
 
 
 15
 (ER 39). In July 1994, Davis sent a copy of the District Director's 1994 letter to Roen Construction, putting Roen on notice of the Wage and Hour Division's determination that the relevant wage rate and job classifications would be derived from the 1992 Agreement. (ER 36-40).
 
 
 16
 In June 1994, the business manager of the Laborers District Council sent a letter to the UA purporting to terminate the 1992 Agreement that formed the basis of the original Conte letter. (ER 43). The UA, however, refused to accept the termination of the Agreement, and as far as the rather sparse record before us reflects, the Laborers took no further action to validate its position. In any event, in March 1996, nearly two years after the purported termination of the Agreement, Conte, along with Richard Cheung, a Labor Department Regional Wage Specialist, again wrote to Mr. Davis and reconfirmed the Department's earlier conclusion that the relevant wage classifications were those set forth in the Agreement. In this letter, the District Director stated:
 
 
 17
 The Wage and Hour Division has determined that the Agreement between Northern California District Council of Laborers and Pipe Trades District Coun cil No. 51 . . . reflects a longstanding prevailing practice. The Department of Labor will therefore accept this Agreement as reflecting the prevailing practice.
 
 
 18
 Accordingly, for contracts for the construction of such plants awarded after September, 1992 and sub ject to the Davis-Bacon and Related Acts, the Wage and Hour Division will require the payment of pre vailing wages in accordance with the Agreement.
 
 
 19
 (ER 24). It does not appear that the Labor Department's 1996 letter was ever sent to Roen.
 
 
 20
 In March 1997, following the time period charged in the plaintiffs' False Claims Act complaint, the Labor Department sent Davis another letter. In this letter, signed by John Fraser, the Acting Administrator of the Wage and Hour Division, the Department stated that it had "reexamined [its ] position regarding Wage and Hour Division's ability to enforce the 1992 jurisdictional agreement." (ER 27). The letter concluded that the Department was unable to enforce that agreement because "there are indications that the written agreement was not followed." (ER 27). In such circumstances, the letter stated, an area practice survey is required to determine the actual practice before classifications may be enforced. It is undisputed that no such area practice survey has been completed, and the record suggests that the Department of Labor has now decided not to conduct such a survey.
 
 Analysis
 
 21
 We first address a threshold question. In granting the defendants' motion for summary judgment, the district court relied on the sole ground that "no reasonable juror could find that defendants' scienter rose to the level required by the False Claims Act." (ER 229). The court appears to have assumed, without deciding, that the FCA extends to false claims that an employer has paid the prevailing wage required by the Davis-Bacon Act. The district judge did comment, however, that "[o]ther courts have been hesitant to hear FCA claims based on the alleged misclassification of workers because of the Davis-Bacon Act's regulatory scheme, " suggesting that the FCA might, in fact, not cover claims such as the one before us today. (ER 229; citing United States ex rel. I.B.E.W. Local 217 v. G.E. Chen Construction, Inc. , 954 F. Supp. 195 (N.D. Cal. 1997); United States ex rel. Plumbers and Steamfitters Local 342 v. Dan Caputo Co., 1996 WL 400967 (N.D. Cal. 1996); United States ex rel. Windsor v. DynCorp. Inc., 895 F. Supp. 844 (E.D. Va. 1995)). Contrary to such suggestion, the FCA does indeed extend to false statements regarding the payment of prevailing wages.
 
 
 22
 As we noted in United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir. 1996), "the archetypal qui tam FCA action is filed by an insider at a private company who discovers his employer has overcharged under a government contract." It is also true, however, that FCA actions may be sustained under different theories of liability, including "false certification." See id. (citing United States v. Hibbs, 568 F.2d 347 (3d Cir. 1977)). As we held in Anton,"[i]t is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." Id. (emphasis in original).
 
 
 23
 As shown above, in order to qualify for federal construction projects subject to Davis-Bacon and related Acts, contractors must "certify" that "each laborer or mechanic has been paid not less than the applicable wage rates." 29 CFR S 5.5(a)(3)(B)(3). Under Anton, therefore, if a contractor submits a false certification pursuant to this requirement he may be liable under the FCA. Moreover, the regulations governing federal construction contracts make this perfectly clear. Those regulations state explicitly that "[t]he falsification of any [such] certification[ ] may subject the contractor to civil . . . prosecution under . . . section 231 of title 31 of the United States Code [The False Claims Act]." 29 CFRS 5.5(a)(3)(D).[1]
 
 
 24
 We have no doubt, therefore, that a false certification that workers have been paid at the legally required wage rate may give rise to liability under the FCA. If, as the Plumbers allege, Roen and its president and office manager submitted such false certifications, it may be liable under the False Claims Act. See Anton, 91 F.3d at 1266.
 
 
 25
 We turn now to the question of scienter. The False Claims Act imposes liability only on those who "knowingly" present a "false or fraudulent claim" to the government. See 31 U.S.C. S 3729(a)(1). Mere negligence and "innocent mistake[s]" are not sufficient to establish liability under the FCA. United States ex rel. Hochman v. Nackman , 145 F.3d 1069, 1073 (9th Cir. 1998). While some of our cases may contain extraneous comments that might be read out of con- text to suggest that the FCA requires an intentional lie to trigger liability, those cases almost invariably reiterate the controlling statutory language that is determinative of their outcome. As the FCA provides, to rise to the level of "knowing" presentation, all that is required is that the party:
 
 
 26
 (1) has actual knowledge of the information;
 
 
 27
 (2) acts in deliberate ignorance of the truth or falsity of the information; or
 
 
 28
 (3) acts in reckless disregard of the truth or falsity of the information,
 
 
 29
 and no proof of specific intent to defraud is required.
 
 
 30
 31 U.S.C. S 3729(b). We have repeatedly emphasized this statutory language when describing the scienter requirement under the FCA. See, e.g., Hagood v. Sonoma County Water Agency, 81 F.3d 1465, 1478 (9th Cir. 1996); Wang v. FMC Corp., 975 F.2d 1412, 1420 (9th Cir. 1992); United States ex rel. Hagood v. Sonoma County Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991). Thus, in order to be liable for an FCA violation, Roen's conduct need only qualify under one of the alternative statutory standards, such as "deliberate ignorance" or "reckless disregard".
 
 
 31
 The district court granted summary judgment to the defendants for two reasons. As the district court held:
 
 
 32
 [The plaintiffs' claim] fails due to the FCA's scienter requirement: plaintiffs are unable to show that defendants knew of an intentional mis-classification in their payroll records. This failure is inevitable given the uncertainty surrounding the Department of Labor's efforts to establish the classification relevant to this case and the undisputed fact that the Wage and Hour Division of the Department of Labor has not yet performed an area practice survey in Sonoma County to determine the actual classification practices there.
 
 
 33
 (ER 228). That is, the district court found summary judgment to be appropriate because (1) the Department of Labor had not conducted an area practice survey, and (2) the Department's other efforts to establish the prevailing wage were "uncertain." We disagree as to both reasons.
 
 
 34
 Under Davis-Bacon, employers are required to pay prevailing wages to all employees on covered federal construction projects. The wage rate an employer must pay is determined in two steps: first, the employer must ascertain an employee's proper job classification; second, the employer must ascertain the prevailing wage rate for that job classification. By matching the rate to the classification, the appropriate wage is derived. Although area practice surveys are one way in which wage classifications may be established, they are not the only way. Over twenty years ago, the Labor Department's Wage Appeals Board decided Matter of Fry Bros. Corp., 123 WAB No. 76-6, 1977 CCH Wages-Hours Administrative Rulings P 31,113 at 42,757 (June 14, 1977). In Fry Brothers, the Department of Labor withheld funds from the contractor for underpayment of prevailing wages based on the misclassification of carpenters as laborers. Id. at 42758. The Assistant Secretary of the Employment Standards Administration upheld the withholding of funds. Because the prevailing wage determinations that had been issued by the Department of Labor reflected union negotiated rates, the Secretary concluded that job classifications for the disputed project would be based correspondingly on the union negotiated agreements. The contractor objected to this method of establishing prevailing job classifications, and thus the wage rate applicable to its employees. The Wage Appeals Board, however, affirmed the Secretary's decision. The Board held that where the Department determines that the prevailing wage rate for an area derives from a collectively bargaining agreement, then the job classifications for that area must also be derived from that agreement. As the Board wrote:
 
 
 35
 When the Department of Labor determines that the prevailing wage for a particular craft derives from experience under negotiated agreements, the Labor Department has to see to it that the wage determina tions carry along with them as fairly and fully as may be practicable, the classifications of work according to job content upon which the wage rates are based.
 
 
 36
 Id. at 42,762.
 
 
 37
 There are two elements of the Fry Brothers decision relevant to the case before us. First, the Wage Appeals Board made clear that prevailing wage rates may be derived from collective bargaining agreements, not just from an area practice survey conducted by the Labor Department. Second, where the Department determines that prevailing wages are established by a collectively bargained agreement, the job classifications for the project or area at issue are also established by that agreement. We find both elements of twodecades old rule of Fry Brothers to be eminently reasonable. As the Wage Appeals Board explained:
 
 
 38
 If a construction contractor who is not bound by classifications of work at which the majority of employees in the area are working is free to classify or reclassify, grade or subgrade traditional craft work as he wishes, such a contractor can, with respect to wage rates, take almost any job away from the group of contractors and the employees who work for them who have established the locality wage standard. There will be little left to the Davis-Bacon Act.
 
 
 39
 Fry Brothers at 42,762. In order to ensure that this evisceration of Davis-Bacon does not occur whenever the Department of Labor decides not to conduct an area practice survey, we adopt the rule of Fry Brothers here. Accordingly, we hold that an area practice survey is not a prerequisite to the determination of prevailing wage rates or job classifications.
 
 
 40
 Second, contrary to the district court's conclusion, there was nothing uncertain about the Department's efforts to establish the relevant wage classifications, at least during the period of time that Roen was making its wage certifications. The District Director of the Labor Department's Wage and Hour Division, in both his 1994 and 1996 letters to Plumber's counsel, made explicit that the 1992 Agreement established the prevailing practices for water treatment plants in Northern California. (ER 39). The letters could not have been clearer. The 1994 letter, for example, stated that "As of September, 1992, the agreement establishes the prevailing practice for Northern California for the construction of water treatment plants . . . . For contracts for the construction of such plants awarded after September 1992 and subject to Davis-Bacon and Related Acts the Wage and Hour Division will require the payment of prevailing wages in accordance with the[1992] agreement." (ER 39). The 1996 letter simply reconfirmed the 1994 letter. Moreover, although the letters were clear enough in themselves, the District Director also attached to his letters copies of the paragraphs of the 1992 Agreement that specified the relevant job classifications for piping work on water treatment facilities. The inclusion of these attachments enunciated the point that, according to the Wage and Hour Division, the relevant job classifications were established by the 1992 Agreement.
 
 
 41
 It is true, of course, that in its March 1997 letter, the Wage and Hour Division stated that it could not enforce the 1992 jurisdictional agreement because there were "indications that the written agreement was not followed." (ER 27). This letter adds no support, however, to the district court's conclusion that the Department's efforts to resolve the classification issue were "uncertain[ ]," because the 1997 letter was sent after the period charged in the complaint. That is, during the period that Roen was submitting its disputed wage certifications, the department's position -- as expressed in the 1994 and 1996 letters -- remained consistent and was not uncertain.[2]
 
 
 42
 If Roen believed that the Laborers' attempted recission of the Agreement affected the Department's classifications during the period covered by the complaint, it could have sought clarification. Yet Roen, without making any effort to obtain such clarification, certified that the Laborer's rate was the prevailing wage and that it had paid that wage. Roen does not explain the theory under which it certified that the Laborer's rate constituted the prevailing wage rate -- even Roen acknowledges that the Department of Labor is the sole authority responsible for determining prevailing wages, (Appellee's Brief at 25), and the DOL's letter had adopted a different and higher rate. This suggests that Roen's certification may well have risen at least to the level of "deliberate ignorance" or "reckless disregard".
 
 
 43
 We express no view on any other ground on which summary judgment might be based, or rejected. We may reverse an order granting summary judgment where the district court record " `has not been sufficiently developed to allow the court to make a fully informed decision on particularly difficult and far reaching issues.' " Anderson v. Hodel, 899 F.2d 766, 770 (9th Cir. 1990) (quoting William Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 475 (1984)).3 We have held, moreover, that in certain cases "summary judgment may be inapposite because the legal issue is so complex, difficult, or insufficiently highlighted that further factual elucidation is essential for its prudently considered resolution." Eby v. Reb Realty, Inc., 495 F.2d 646, 649 (9th Cir. 1974); see also Tovar v. United States Postal Serv.,[3]. F.3d 1271, 1278-79 (9th Cir. 1993). The case before us fits this bill. Questions regarding the precise manner in which the Department may or must determine prevailing wage rates and job classifications, the effect of the Department's post-hoc repudiation of earlier wage-rate determinations on the question of the falsity of previously submitted wage-rate certifications, the extent to which contractors may be deemed to have knowledge of the Department's actions, the type of certification that is appropriate if the contractor contends that no prevailing wage exists or that the classification issue remains unresolved, and the various other questions the resolution of which may be required before this case can be finally resolved are both difficult and insufficiently developed on the current record to allow for summary judgment. To this point, neither the district court nor the parties have devoted sufficient attention to the elucidation and resolution of these issues to permit us to deem a grant of summary judgment appropriate.
 
 
 44
 The district court erred in concluding that because no area survey had been conducted and because the Department's other efforts to establish the relevant classifications were uncertain, summary judgment was proper. (ER 229). Further, development of numerous legal and factual issues is necessary before this case may be decided. We therefore reverse the district court's grant of summary judgment and remand for further proceedings not inconsistent with this opinion.
 
 
 45
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 We also note that in United States ex rel. Plumbers and Steam fitters Local No. 342 v. Dan Caputo Co., 152 F.3d 1060 (9th Cir. 1998), we reversed the district court's decision to dismiss an almost identical False Claims Act claim pending further action by the Department of Labor, and ordered that the action be reinstated and temporarily stayed.
 
 
 [2]
 Although neither party has raised this point, the record also reveals that in December, 1996 a letter was sent to the UA by William Buhl, the Regional Administrator of the Wage and Hour Division. In that letter, Buhl stated that the 1992 Agreement could not establish prevailing wage rates and job classifications because that Agreement had been repudiated. (ER 133). Whatever effect the letter had on the "certainty" of the Department's efforts to resolve the classification issue, and we do not decide that question, it could only have affected the certainty during the very end of the time period charged in plaintiffs' complaint. It could not, of course, had any such effect prior to the date it was written.
 
 
 [3]
 The Supreme Court announced this principle in Kennedy v. Silas Mason Co., 334 U.S. 249 (1948), in which it held that in cases involving complex legal issues where the record in unclear it is "good judicial administration to withhold decision of the ultimate questions involved in th[e] case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts."
 
 
 SILVERMAN, Circuit Judge, dissenting:
 
 46
 The majority's discourse on labor law is interesting, scholarly, probably correct, but largely beside the point. This is a False Claims Act case. The point is not whether an area practice survey is the only way to establish prevailing wages. The point is that the undisputed facts did not show that Roen's certifications, even if incorrect, were made with an intent to deceive as required by the FCA.
 
 
 47
 "For a qui tam action to survive summary judgment, the relator must produce sufficient evidence to support an inference of knowing fraud." United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1267 (emphasis added) (quoting United States ex rel. Anderson v. Northern Telecom, Inc. , 52 F.3d 810, 815 (9th Cir. 1995)). As we said in Wang v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992):
 
 
 48
 The weakest account of the act's "requisite intent" is the "knowing presentation of what is known to be false." Citing Hagood, supra, 929 F.2d at 1421. The phrase "known to be false" in that sentence does not mean "scientifically untrue"; it means "a lie."
 
 
 49
 This is especially true in a False Claims Act case premised on a false certification. In Hopper, we specifically held, "For a certified statement to be `false' under the Act, it must be an intentional, palpable lie." Hopper, 91 F.3d at 1267. The majority argues that these principles are "extraneous comments" that have been "read out of context to suggest that the FCA requires an intentional lie to trigger liability, . . ." With all due respect, if anything is out of context, it is the attempt to apply the False Claims Act to the resolution of a jurisdictional dispute between two unions, especially when one of the unions is not even a party to the lawsuit.
 
 
 50
 It is undisputed that at the time Roen submitted its first certification, both the Laborers and the Plumbers claimed jurisdiction over the piping work at the Laguna project. Two years earlier, prior to the commencement of the job, the Plumbers and the Laborers had a jurisdictional agreement regarding the type of work in issue. The two unions had agreed that it was Plumbers' work. It is undisputed that before Roen ever filed its first allegedly fraudulent certification, the Laborers rescinded the agreement and claimed the work as their own. The majority makes much of the 1994 letter from the Department of Labor. The problem with the letter is that it is specifically premised on the existence of the Plumbers-Laborers agreement, the very agreement that the Laborers rescinded before the Laguna job began.
 
 
 51
 Perhaps the Laborers' attempted recission of the agreement was ineffective. Perhaps Roen could have sought a clarification. Perhaps Roen was governed by the Department of Labor's letter regardless of the status of the jurisdictional dispute between the Plumbers and the Laborers. Perhaps an area practice survey is not a prerequisite to the determination of prevailing wages. Perhaps, in other words, Roen's certifications were mistaken. All that may be true, but in a False Claims Act case, that's not enough. To survive Roen's summary judgment motion, the Plumbers also had to show that Roen acted with an intent to deceive. In my view, Judge Illston got it exactly right when she held that in light of the thenexisting jurisdictional war between the two unions,"[The Plumbers] are unable to show that [Roen] knew of an intentional misclassification in their payroll records. " I would affirm.