321 F.3d 926
UNITED STATES of America, ex rel., Plaintiff, andLOCAL 342 PLUMBERS and STEAMFITTERS; Doyle Williams, Plaintiffs-Appellants,v.DAN CAPUTO CO.; D.W. Nicholson Corp.; Richard R. Rolla; Alex Groswird; Mary Cooper; John Lewis Nicholson; Florence L. Johnson, Defendants-Appellees.United States of America, ex rel., Plaintiff, andLocal No. 38 Plumbers and Steam-fitters; Lawrence J. Mazzola, Plaintiffs-Appellants,v.C.W. Roen Construction; Bruce A. Roen; Jeraldine C. Breault, Defendants-Appellees.
No. 01-17300.
No. 02-15187.
United States Court of Appeals, Ninth Circuit.
Argued and Submitted January 13, 2003.
Filed March 5, 2003.

John J. Davis, Jr. and Michael T. Anderson, Davis, Cowell & Bowe, LLP, San Francisco, CA, for the plaintiffs-appellants.
Stephen C. Tedesco, Littler Mendelson, San Francisco, CA, for defendants-appellees Dan Caputo Company, et al.
James P. Watson, Stanton, Kay & Watson, LLP, San Francisco, CA, for defendants-appellees C.W. Roen Construction Co., et al.
Appeals from the United States District Court for the Northern District of California; Maxine M. Chesney, District Judge, Presiding, Susan Illston, District Judge, Presiding. D.C. Nos. CV-95-00684-MMC(EDL), CV-96-02976-SI.
Before: SCHROEDER, Chief Judge, NOONAN and CLIFTON, Circuit Judges.
NOONAN, Circuit Judge.

1
Dan Caputo Co., et al., ("Caputo") and C.W. Roen Construction Co., et al., ("Roen") were each sued in separate cases by, respectively, Local Union No. 342 and Local Union No. 38 of the Plumbers and Steamfitters ("the Union") for failure to pay the prevailing wage rate as required by the Davis-Bacon Act, 31 U.S.C. § 3729(a)(2) and the Copeland Act, 40 U.S.C. §§ 276a and 276c. The suits were brought in the form of claims against Roen and Caputo under the False Claims Act, 31 U.S.C. § 3729. In each case, the district court gave judgment for the contractor. The Union has appealed, and we have consolidated the appeals. Holding that the Union failed to prove a false claim by either company, we affirm the judgments of the district courts.

FACTS

2
On May 24, 1993, Caputo was awarded a contract by the Union Sanitary District to perform the expansion of a waste-water treatment plant in Alameda County. The contract was federally financed and governed by Davis-Bacon. Caputo certified compliance with Davis-Bacon, paying workers on piping as Laborers; its subcontractor, D.W. Nicholson Corp., paid such workers as Millwrights.

3
A jurisdictional dispute existed between the union embracing Laborers and the union embracing Plumbers ("the U.A."). That dispute appeared to be settled in May 1992 by an agreement between the two unions that Plumbers' wages should be paid for all piping work on water treatment plants, except that Laborers' wages should be paid on the installation of non-pressurized surface and storm drain piping. On January 18, 1994, Frank A. Conte, the district director of the Wage and Hour Division of the Department of Labor ("the Department"), wrote a letter to John J. Davis, counsel for the Union, as follows:

4
This letter is as per our discussion of January 7, 1994 related to the subject agreement. As of September, 1992, the agreement establishes the prevailing practice in Northern California for the construction of water treatment plants, wastewater treatment plants, water reclamation plants and all pumping facilities related to such plants in Northern California. For contracts for the construction of such plants awarded after September, 1992 and subject to Davis-Bacon and Related Acts the Wage and Hour Division will require the payment of prevailing wages in accordance with the agreement.

5
A copy of the agreement is attached. If you should have any questions, please do not hesitate to contact me.

6
Later in January 1994, Davis sent a copy of the Conte letter to Caputo. On June 17, 1994, the Laborers notified the U.A. that they were terminating the agreement on which Conte relied.

7
On July 1, 1994, Davis brought the Conte-Davis letter to the attention of the Union Sanitary District, seeking help in its enforcement against Caputo. The Union Sanitary District asked Caputo for an explanation. Caputo replied that the agreement between the Plumbers and Laborers had been abrogated. The Union Sanitary District then accepted Caputo's classification.

8
On September 1, 1994, Roen entered into a construction contract with the City of Santa Rosa, California, to make improvements to the Laguna Wastewater Treatment Plant. The Laguna Plant was a federally funded project on which Roen certified that it classified workers on piping as Laborers and paid them the prevailing wage for Laborers.

9
On February 25, 1995, Davis wrote Conte requesting enforcement against Caputo in accordance with the Conte-Davis letter of January 18, 1994. A year later, on February 21, 1996, Conte wrote Davis, modifying his 1994 letter, as follows:

10
This letter supersedes earlier correspondence from the Wage and Hour Division regarding the subject of prevailing area practice as it pertains to the payment of wage rates for the construction of water treatment plants, wastewater treatment plants, water reclamation plants and all pumping facilities related to such plants.

11
In its letter to you of January 18, 1994, the Wage and Hour Division stated that the Agreement between the Northern California District Council of Laborers and Pipe Trades District Council No. 51 (copy attached) established the prevailing practice in Northern California for the construction of water treatment plants, wastewater treatment plants, water reclamation plants and all pumping facilities related to such plants.

12
On further analysis, it is apparent that if this were the case, then only contracts sent for bid after September, 1993 would be subject to the payment of prevailing wages in accordance with the agreement as the prevailing practice would need to be in effect for a twelve month period prior to the sending out of the Notice to Bid.

13
You state that the Agreement was an affirmation of a long-standing prevailing practice. Accordingly, we would look at the twelve month period prior to the award of contract to determine the prevailing practice. In the absence of contrary information, the Department of Labor will accept this Agreement as the prevailing practice.

14
Accordingly, for contracts for the construction of such plants awarded after September, 1992 and subject to the Davis-Bacon and Related Acts, the Wage and Hour Division will require the payment of prevailing wages in accordance with the Agreement. The Division is proceeding with enforcement action on such projects.

15
Further discussions with the Union resulted in Conte superseding the letter of February 21, 1996, which itself had superseded the letter of January 18, 1994. Conte now wrote Davis on March 11, 1996:

16
This letter supersedes earlier correspondence from the Wage and Hour Division regarding the subject of prevailing practice as it pertains to the payment of wage rates for the construction of water treatment plants, wastewater plants, water reclamation plants and all pumping facilities related to such plants.

17
The Wage and Hour Division has determined that the Agreement between Northern California District Council of Laborers and Pipe Trades District Council No. 51 (copy attached) reflects a longstanding prevailing practice. The Department of Labor will therefore accept this Agreement as reflecting the prevailing practice.

18
Accordingly, for contracts for the construction of such plants awarded after September, 1992 and subject to the Davis-Bacon and Related Acts, the Wage and Hour Division will require the payment of prevailing wages in accordance with the Agreement. The Division is proceeding with enforcement action on such projects.

19
The regional office of the Department did not proceed with the enforcement action but investigated the prevailing practice, ultimately referring questions to headquarters in Washington.

20
On November 14, 1996, Maria Eschaveste, the administrator of the Wage and Hour Division of the Labor Department, wrote to another local of the Plumbers as follows:

21
I understand your concern in light of the commitments made in two letters from the local officials of the Wage and Hour Division, one sent by Wage and Hour District Director Frank A. Conte to John J. Davis, Jr., Esq. on January 18, 1994, and another sent to Mr. Davis on March 11, 1996, signed by Mr. Conte and Regional Wage Specialist Richard Cheung. Both letters indicated that the Wage and Hour Division would enforce classification descriptions for pipefitters and laborers according to a 1992 agreement between United Association District Council No. 51 and the Northern California District Council of Laborers. Unfortunately, these letters were erroneous in that they provided incomplete advice. Such an agreement between unions has weight with regard to Wage and Hour Division enforcement of prevailing wage rates under the Davis-Bacon and related Acts only if it reflects the actual prevailing practice among union contractors whose employees perform the work in question in the local area (where, as is the case here, the union negotiated wage rates have been recognized as prevailing and are listed in the applicable Davis-Bacon wage determination, the prevailing practice among union contractors is dispositive.) Where there is evidence that the local practice may not substantiate the terms of a jurisdictional agreement between unions, the appropriate means of determining the proper classification of employees performing given duties, in accord with longstanding Wage and Hour policy and procedures, can only be a prevailing practice survey, where we have adequate resources to dedicate to such an effort.

22
I have asked that an area practice survey be conducted as soon as possible.

23
The Plumbers continued to seek enforcement. On March 17, 1997, John R. Fraser, Acting Administrator of the Employment Standards Wage and Hour Division wrote Davis:

24
As promised at your earlier meeting with Suzanne Seiden, Bill Gross and Ethel Miller, we have reexamined our position regarding Wage and Hour Division's ability to enforce the 1992 jurisdictional agreement between the Northern California District Council of Laborers and Pipe Trades District Council # 51. It is your position that Wage and Hour should enforce the 1992 agreement under the principles established in Matter of Fry Brothers Corp. (Wage Appeals Board Case No. 76-6).

25
Although we agree that the principles established in the Fry Brothers case apply to the current situation, the Fry Brothers case does not permit us to enforce the 1992 jurisdictional agreement without an area practice survey. Under the principles established by Fry Brothers, when a wage determination is based on collectively bargained wages and benefits, any question regarding the proper classification for a particular type of work must also be based on the union practice. The union practice, however, must be the actual practice followed by union employers, and cannot be based on written agreements if there are indications that the written agreement was not followed. In this case, the underlying basis for your complaint is that the 1992 jurisdictional agreement was not followed in actual practice, thereby necessitating an area practice survey to determine the actual practice.

26
With respect to your concern regarding the statement in Regional Administrator Buhl's letter of December 19, that the 1992 jurisdictional "agreement was quickly voided and in effect there is no agreement," this statement was not intended to take a position regarding the parties' legal obligations under the agreement. The sole purpose of the statement in Mr. Buhl's letter was to recognize the fact that the agreement was not followed and that Wage and Hour would need to conduct an area practice survey rather than rely on the written agreement.

27
As you are aware, the Wage and Hour San Francisco Regional Office is currently conducting the necessary area practice survey. The data collection for that survey should be completed by April 4, 1997, and any further concerns or information regarding the survey should be directed to the San Francisco Office.

28
The Union asked for reconsideration. On March 2, 1999, Corlis L. Sellers of the Department's National Office Program Administration formally replied to this request, denying it with "a final ruling under 19 CFR 5.13." The ruling specified as to the Alvarado Project awarded to Caputo:

29
• With regard to the earlier survey already discussed, we determined that there was not a clear basis to conclude that UA workers prevailed in the performance of disputed work in Alameda County.

30
• The Davis-Bacon wage determination that should have been incorporated in the contract for the Alvarado Wastewater Treatment Plant upgrade project included a "pressure pipelayers" classification in the Laborers' "Construction Specialist Group," reflecting the classifications and rates bargained by the Laborers for use on construction work in the area.

31
• There is no evidence in the record of any challenge to the inclusion of the "pressure pipelayer" classification in the Davis-Bacon wage determination prior to the award of the Alvarado Waste-water Treatment Plant upgrade project.

32
• There has been a longstanding dispute between the UA and Laborers unions over who should perform pipe installation work on treatment plant projects in Northern California.

33
• The project has long since been completed. Available information indicates that on June 27, 1996, the Union Sanitary District (USD) issued a notice of contract completion to Dan Caputo on this project. As the relevant survey period for the 1993 project would be 5 to 6 years ago, conduct of such a survey would likely pose serious difficulties, similar to those encountered in the review of the previously discussed surveys, with respect to the availability of reliable and relevant details concerning the duties performed by employees on surveyed projects.

34
The Union was informed that it could petition for review; it did not do so.

PROCEEDINGS

35
On August 27, 1995, the Union brought this suit against Caputo in the district court. That court dismissed the suit in order to allow the Department to make findings "on the particular facts of the case." The Union appealed. We held that "deferral to the Department with respect to classification determinations is proper under the doctrine of primary jurisdiction." But we held that the suit should not have been dismissed but stayed. United States ex rel. Plumbers and Steamfitters Local Union No. 342 v. Dan Caputo Co. et al., 152 F.3d 1060, 1061 (9th Cir.1998).

36
On remand, the district court granted summary judgment to Caputo, ruling that the Department's letter of March 2, 1999, conclusively determined that Caputo had not misclassified its employees.

37
On August 19, 1996, the Union filed its suit against Roen. The district court granted summary judgment to Roen, ruling that the prevailing wage was uncertain, so the Union could not show Roen had knowingly submitted false claims. On appeal, we held, (1) that the False Claims Act was a proper vehicle to use to enforce Davis-Bacon; (2) that "an area practice survey" was not essential to the determination of a prevailing wage, but that such wage could "be derived from collective bargaining agreements." United States ex rel. Plumbers and Steamfitters Local Union No. 38 v. C.W. Roen Construction Co. et al., 183 F.3d 1088 (9th Cir.1999), cert. denied, 530 U.S. 1203, 120 S.Ct. 2195, 147 L.Ed.2d 232 (2000). We accordingly, reversed and remanded, noting:

38
Questions regarding the precise manner in which the Department may or must determine prevailing wage rates and job classifications, the effect of the Department's post-hoc repudiation of earlier wage-rage determinations on the question of the falsity of previously submitted wage-rate certifications, the extent to which contractors may be deemed to have knowledge of the Department's actions, the type of certification that is appropriate if the contractor contends that no prevailing wage exists or that the classification issue remains unresolved, and the various other questions the resolution of which may be required before this case can be finally resolved are both difficult and insufficiently developed on the current record to allow for summary judgment. Id. at 1095.

39
On remand, the district court ruled that the Department had not followed the procedures for settling wage disputes set out in 29 C.F.R. § 5.11, which states:

40
This section sets forth the procedure for resolution of disputes of fact or law concerning payment of prevailing wage rates, overtime pay, or proper classification. The procedures in this section may be initiated upon the Administrator's own motion, upon referral of the dispute by a Federal agency ... or upon request of the contractor or subcontractor(s).

41
As the Conte-Davis correspondence did not follow the basic rules of § 5.11 — Conte did not notify the contractor of his findings and no provisions were made for a hearing — the determinations made therein were not binding. The Union offered no other evidence of the prevailing wage.

42
Alternatively, the district court ruled on the Union's contention that § 5.13 of the regulations applied. This section states:

43
All questions relating to the application and interpretation of wage determinations (including the classifications therein) ... shall be referred to the Administrator for appropriate ruling or interpretation. The rulings and interpretations shall be authoritative ....

44
The court held that the Union had never invoked § 5.13. The court granted summary judgement in favor of Roen.

45
The Union appeals both judgments.

ANALYSIS

46
Congress has given the Department the authority to determine the prevailing wage for Davis-Bacon purposes. 40 U.S.C. §§ 276a(a), 276a-7; Universities Research Ass'n v. Coutu, 450 U.S. 754, 756-57, 101 S.Ct. 1451, 67 L.Ed.2d 662 (1981). The procedure for obtaining this determination is set out in 29 C.F.R. § 5.11. This section governs the "resolution of disputes of fact or law concerning payment of prevailing wage rates, overtime pay or proper classification." A dictum of the Supreme Court adds that "prior to the award of a contract" a contractor or labor organization may also obtain a ruling on a disputed classification of workers from the Secretary of Labor under § 5.13. Coutu, 450 U.S. at 760-61, 101 S.Ct. 1451.

47
The Union does not contend that it sought a determination under § 5.11. It did not seek a determination under § 5.13 prior to the award of the contract to Caputo. According to the Coutu dictum, § 5.13 may be used to bring a dispute over classification to the administrator of the Wage and Hour Division. We accept the Union's contention that the administrator may delegate his dispute-settling authority to a subordinate. We assume, without deciding, that authority was thus delegated to Conte and that Davis's informal ex parte approach to him was an invocation of § 5.13. Conte's letters, however, were not final agency action as they were not treated as such by the agency but repudiated by the Department. Consequently, neither under § 5.11 nor under § 5.13 was a prevailing wage determined by the Department.

48
The Department's Wage Appeals Board decided in 1977 that prevailing wage rates and job classifications may be derived from collective bargaining agreements. Matter of Fry Brothers Corp., 123 WAB No. 76-7, 1997 CCH Wages-Hours Administrative Rulings ¶ 31, 113 at 42, 757 (June 14, 1977). Our holding in Roen I confirmed this principle. Here, however, there is no evidence of a collective bargaining agreement; the evidence offered is a jurisdictional agreement between two labor unions.

49
For a false claim suit to succeed, the plaintiff must show that the claim was false, that is, contrary to an existing state of things. 31 U.S.C. § 3729(a)(1); U.S. ex rel. Foundation Aiding the Elderly v. Horizon West, 265 F.3d 1011, 1015 (9th Cir.2001). The Union in this case has not shown that the defendants failed to pay the prevailing wage. The May 1992 agreement of the Laborers and the Plumbers did not establish a prevailing wage, as the agreement was not followed. No prevailing wage or classification of work was established by any actual survey. No prevailing wage or classification was established by any collective bargaining agreement, the second way Roen I held a prevailing wage might be established. No prevailing wage was established by the three Conte-Davis letters, the second superseding the first, and third superseding the second, with Conte's conclusions finally being repudiated by his superior. The Fraser-Davis correspondence even notes that the failure to follow the 1992 agreement of the Laborers and Plumbers was "the underlying basis for the Union's complaint."

50
For the foregoing reason, the judgment of each district court is AFFIRMED.